Opinion issued March 22, 2007






 









In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00819-CR






BOB LEWIS SMITH, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 177th District Court

Harris County, Texas

Trial Court Cause No. 1023640









O P I N I O N

 A jury convicted appellant, Bob Lewis Smith, of burglary of a habitation, (1) the
underlying felony being that he committed or attempted to commit indecency with a
child. (2) After finding two enhancement paragraphs true, the trial court sentenced
appellant to life imprisonment. In nine points of error, appellant contends that (1) the
trial court erred when it refused to suppress his videotaped oral statement to police;
(2) the trial court improperly suppressed evidence of the complainant's probationary
status; (3) the trial court erred when it refused to allow appellant to cross-examine the
interrogating officer about appellant's invocation of his right to end the interview;
(4) the trial court erred when it allowed hearsay testimony about fingerprint evidence;
and (5) the evidence is legally insufficient to support appellant's conviction for
burglary of a habitation.

 We affirm.

Facts

 On the morning of August 3, 2004, the 13-year-old complainant, E.C., was
home alone and in bed sleeping. At one point, she woke up and heard noises that
sounded as if someone were throwing things. She was unconcerned, however,
because she assumed that her brother was the source of the noise. She got out of bed,
stepped into the hall, and headed for the bathroom, but stopped when she saw a man
she had never seen before holding her father's handgun. Scared that he might hurt
her, she got down on her knees. After confirming that no one else was in the house, 
appellant grabbed her by the shoulder, pulled her up, put the gun to her head, and
took her back to her bedroom to search for money and jewelry. When he found none,
he forced her to accompany him on a search of the house. On several occasions he
held the gun to her head, at one point pulling the slide back, causing E.C. to believe
that he was about to kill her.

 While in the bathroom, appellant ordered E.C. to take her shirt off. As he
pointed the gun at her, appellant touched her breast over her training bra, and then
told her to put her shirt back on. He then took her back to her bedroom, and she sat
on her bed. Again pointing the gun at her, he unbuttoned and pulled down her pants. 
She covered herself with a blanket, but he pulled it away and touched her private
parts over her panties. She moved away, but he got on the bed, opened her legs,
climbed on top of her, and started moving up and down. She managed to roll out
from under him and go to the window. After a brief exchange, she lay down on her
bed, and he covered her with a blanket and left.

 Police arrived shortly afterwards and lifted prints from various locations in the
house. Police later identified a print found on the frame of a bathroom window
screen as appellant's. 

 Less than a week after the burglary, E.C. met with a forensic sketch artist, who
created a composite sketch of the man who had assaulted her. After seeing this
picture, Officer R. Razo, who had been assigned to the case, identified appellant as
a possible suspect. Officer Razo included appellant's picture in a photo spread and
showed it to E.C. Initially, E.C. did not recognize any of the men as the man who had
assaulted her, but when asked if any of the men in the photo spread had any of the
same characteristics as the man who had assaulted her, she pointed at the picture of
appellant, saying that he had the same cheeks. Later, E.C. was shown a live line-up. 
Again, she initially was unable to identify the man who had assaulted her, but then
said, "Yes, No. 4 [appellant] looks like him."

 After the live line-up, appellant was taken to a video room for interrogation by
Officers Razo and J. Anderson. Officer Anderson read him his rights, including his
right to terminate the interview at any time. Appellant stated that he understood these
rights and agreed to waive them and speak to the officers. At one point, appellant
said, "Man. Whatever's gonna happen, cause I'm just ready to go up there and eat." 
A few minutes later he said, "Could I go upstairs because I'm hungry?" Appellant
was provided with chips and soda, and the interrogation continued. Appellant
admitted to entering E.C.'s home, but denied touching her. 

 Before trial, appellant filed a motion to suppress the videotaped statement,
arguing that it was involuntary and made without the presence of an attorney when
he had not waived his right to counsel, that he was not immediately taken before a
magistrate and given his warnings, and that he was not given a legally sufficient
warning of his rights by the police officer to whom he made his statement. At the
suppression hearing, appellant argued that his confession was inadmissible only
because his requests to terminate the interview were not honored. The trial court
denied his motion to suppress, but did order the State to redact certain parts of the
videotape. At trial, because the State did not offer into evidence the portion of the
videotape where appellant made the statements that he was ready to eat and that he
was hungry, appellant argued that he was entitled to introduce these statements
through Officer Razo and to cross-examine Officer Razo about them because they
indicated that appellant had attempted to terminate the interrogation. The court ruled
that the evidence was inadmissible as hearsay.

 At trial, E.C. was not asked to identify appellant as the man who had assaulted
her. She provided detailed testimony about the assault, however, and testified that
the man was wearing a silver necklace in the shape of the State of Texas, which
appellant was wearing when he was arrested. Over appellant's objections, Officer
D. Horace and Medina Carter Bufford, a registered nurse at the Children's
Assessment Center who examined E.C., also gave detailed descriptions of the assault
based on what E.C. had told them.

 Before defense counsel cross-examined E.C., the trial court held a hearing
outside the presence of the jury on whether to allow impeachment evidence of E.C.'s
deferred-adjudication probation. The testimony showed that on October 1, 2004,
after appellant assaulted her but before his case went to trial, E.C. was arrested and
placed on deferred-adjudication probation for a felony drug offense. Upon
questioning by defense counsel, she testified that, since her arrest, there had been no
discussion about her being a witness in appellant's case: the prosecutor in appellant's
case had not discussed E.C.'s case with E.C., E.C.'s probation officer had not spoken
with her about her testimony at appellant's trial, and the fact that she was on
probation would have no effect on her testimony. After hearing E.C.'s testimony, the
trial court ruled that it would not allow her to be impeached with her deferred
adjudication, concluding that "the prejudicial effect . . . far outweighs the probative
value of that inquiry."

 At trial, Officer D. Benningfield, a latent print (3) examiner with the Houston
Police Department, testified that of the 12 partial prints that had been lifted from
E.C.'s house, only one, a palm print, was sufficient for comparison, and it did not
belong to appellant. The other 11 prints were, in her opinion, not sufficient for
comparison. These prints, therefore, were not compared to appellant's prints. Upon
defense counsel's request, the court ordered Officer Benningfield to compare these
11 remaining prints to appellant's prints. After making the comparisons, Officer
Benningfield was unable to attribute them to appellant or to determine that they did
not belong to him--i.e., they were "unusable." She testified, however, that she had
asked other examiners to look at a particular print that had been lifted from the metal
frame of a window screen at E.C.'s house. Over appellant's objection, Officer
Benningfield testified that two officers--Officers Stairhime and Saldivar--had
reached a conclusion about the print and that their conclusions were the same.

 The State later called Officer Stairhime to testify. (4) He explained that, in his
opinion, the latent print from the window screen, which Officer Benningfield had
deemed unusable, did belong to appellant. Upon continued questioning by the State,
Officer Stairhime testified, over appellant's objection, that in order for him to testify
in court to a positive identification, he needed to have at least one more examiner
come to the same conclusion.

Motion to Suppress In his first and second points of error, appellant complains that the trial court
erred when it denied his motion to suppress his videotaped confession. More
specifically, appellant argues that the confession was inadmissible because (1) the
police continued to interrogate him after he invoked his right to end the interview and
(2) his confession was coerced.

 A trial court's ruling on a motion to suppress lies within the discretion of the
court. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). As the sole
trier of fact during a suppression hearing, the trial court may choose to believe or
disbelieve all or any part of a witness's testimony. State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000). A trial court abuses its discretion if it refuses to suppress
evidence that is obtained in violation of the law and that is, therefore, inadmissible. 
Erdman v. State, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993). 

 In reviewing a trial court's ruling on a motion to suppress, we apply a
bifurcated standard of review. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim.
App. 2000). Although we give almost total deference to the trial court's
determination of historical facts, we conduct a de novo review of the trial court's
application of the law to those facts. Id. We examine the evidence in the light most
favorable to the trial court's ruling. State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).

 Invocation of Right to Terminate Interrogation

 In his second point of error, appellant contends that his confession was illegally
obtained in violation of Miranda v. Arizona, (5) because his requests to terminate the
interrogation were not honored. Specifically, he argues that he told police, "I just
want to end this and get something to eat because I'm hungry," and, "I'm going to
stop this and go upstairs and get something to eat"; that these statements clearly
invoked his Fifth Amendment right to remain silent; and that Officer Anderson's
continued questioning violated his rights under the United States Constitution. The
State responds that appellant did not say "I just want to end this and get something
to eat because I'm hungry," or, "I'm going to stop this and go upstairs and get
something to eat," but rather, "Man. Whatever's gonna happen, cause I'm just ready
to go up there and eat," and, "Could I go upstairs because I'm hungry?" These
statements, according to the State, are not unambiguous invocations of his right to
terminate the interview and, therefore, his confession was voluntary, and the motion
to suppress was properly denied.

 The right to terminate custodial questioning by police is among the procedural
safeguards established by Miranda. 384 U.S. 436, 473-74, 86 S. Ct. 1602, 1627
(1966); Watson v. State, 762 S.W.2d 591, 596 (Tex. Crim. App. 1988); Cooper v.
State, 961 S.W.2d 222, 225 (Tex. App.--Houston [1st Dist.] 1997, pet. ref'd). If an
accused "indicates in any manner, at any time prior to or during questioning, that he
wishes to remain silent, the interrogation must cease." Miranda, 384 U.S. at 473-74,
86 S. Ct. at 1627; see also Watson, 762 S.W.2d at 596; Cooper, 961 S.W.2d at 225. 
The invocation of the right need not be formal; anything said or done by the accused
that could reasonably be interpreted as a desire to invoke that right is sufficient to cut
off questioning. Cooper, 961 S.W.2d at 225 (citing Watson, 762 S.W.2d at 598). 

 If the police fail to end custodial questioning after the accused has invoked his
right to remain silent, any subsequently obtained statements are inadmissible. 
Dowthitt v. State, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996) (citing Michigan v.
Mosley, 423 U.S. 96, 100-04, 96 S. Ct. 321, 325-26 (1975)). Police may not
continue questioning an accused in an attempt to persuade him to change his mind
and talk. Id. However, police are not required to stop the questioning when the
accused's invocation is ambiguous. Id. Nor are police required to clarify ambiguous
remarks before continuing the interrogation. (6) Id. 

 Here, after a careful review of the videotaped statement, we agree with the
State that appellant did not say, "I just want to end this and get something to eat
because I'm hungry," or, "I'm going to stop this and go upstairs and get something
to eat," but rather appellant stated, "Man. Whatever's gonna happen, cause I'm just
ready to go up there and eat," and, "Could I go upstairs because I'm hungry?" 
Neither of these statements constitutes an unambiguous invocation of his right to end
the interview. The statements indicate only that appellant was hungry and wanted to
eat, not that he wanted to end the interrogation. We conclude, therefore, that
appellant did not unambiguously invoke his right to end the interview, and Officer
Anderson did not violate appellant's rights when she continued to question him. See
Dowthitt, 931 S.W.2d at 257. Thus, appellant's statement was not obtained in
violation of the law and the trial court did not abuse its discretion when it denied his
motion to suppress. See Erdman, 861 S.W.3d at 893.

 We overrule appellant's second point of error.

 Coercion

 In his first point of error, appellant argues that his videotaped confession was
coerced, and therefore inadmissible, because the police (1) lied to him about what
evidence had been collected; (2) threatened him with additional and more serious
charges if E.C. changed her story; and (3) failed to honor his request to end the
interrogation. The State counters that review of the first two bases of coercion--lies
about the evidence and additional and more serious charges--is waived because the
objections do not comport with any of appellant's previous objections that he asserted
in his motion to suppress, at the suppression hearing, or at trial.

 A timely and reasonably specific objection, followed by an adverse ruling, is
required to preserve error for appellate review. Tex. R. App. P. 33.1(a). Additionally,
if the argument presented on appeal is not the same as the objection raised at trial, no
error is preserved and review is waived. Butler v. State, 872 S.W.2d 227, 236 (Tex. 
Crim. App. 1994); Sandoval v. State, 52 S.W.3d 851, 855 (Tex. App.--Houston [1st
Dist.] 2001, pet. ref'd).

 Appellant filed a pretrial motion to suppress his videotaped confession, arguing
that his statement to police was involuntary and made without the presence of an
attorney when he had not waived his right to counsel, that he was not immediately
taken before a magistrate and given his warnings, and that he was not given a legally
sufficient warning of his rights by the police officer to whom he made his statement. 
At the suppression hearing, however, appellant argued that his confession was
inadmissible only because his requests to terminate the interview were not honored
as required by Miranda and the Texas Code of Criminal Procedure. (7) See Miranda,
384 U.S. at 473-74, 86 S. Ct. at 1627; Tex. Code Crim. Proc. Ann. art. 38.22
(Vernon 2005). Appellant did not argue either in his pretrial motion or at the hearing
that the statement was inadmissible because the police had lied to him about what
evidence had been collected and had threatened him with additional and more serious
charges if E.C. changed her story. Appellant makes these arguments for the first time
on appeal. Because he did not raise these objections with the trial court, appellant's
objections are waived. See Tex. R. App. P. 33.1(a). Moreover, appellant has waived
review of his objection to the videotaped statement on these grounds because his
appellate complaints differ from his trial objections. See Butler, 872 S.W.2d at 236;
Sandoval, 52 S.W.3d at 855. 

 Appellant's third basis of coercion--that Officer Anderson failed to honor his
request to end the interview--also fails. We have already determined under
appellant's second point of error that appellant did not unambiguously invoke his
right to end the interview and, therefore, Officer Anderson did not violate appellant's
rights when she continued to question him. Thus, because appellant's right to end the
interview was not violated, Officer Anderson could not have coerced him into giving
a statement on this ground.

 We overrule appellant's first point of error.

Confrontation and Cross-Examination

 In his third point of error, appellant argues that the trial court erred when it
denied appellant the opportunity to cross-examine E.C. about her deferred-adjudication probation, in violation of his right to confrontation.

 The constitutional right of confrontation necessarily includes the right to cross-examine the State's witnesses. Carroll v. State, 916 S.W.2d 494, 497 (Tex. Crim.
App. 1996). Because cross-examination is the "cornerstone" of the criminal trial
process, a defendant "must be given wide latitude to explore a witness's story, to test
the witness's perceptions and memory, and to impeach his or her credibility." Cooper
v. State, 95 S.W.3d 488, 492 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd) (citing
Gutierrez v. State, 764 S.W.2d 796, 799 (Tex. Crim. App. 1989)). Even so, "the trial
court retains wide latitude to impose reasonable limits on cross-examination based
on, among other things, concerns about harassment, prejudice, confusion of the
issues, the witness's safety, or interrogation that is repetitive or only marginally
relevant." Id. at 492 (citing Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S. Ct.
1431, 1435 (1986)).

 A defendant's constitutional right of confrontation is violated when a trial court
improperly limits his cross-examination of a witness. Id. at 492 (citing Van Arsdall,
475 U.S. at 679, 106 S. Ct. at 1435; Hurd v. State, 725 S.W.2d 249, 252 (Tex. Crim.
App. 1987)). The scope of appropriate cross-examination is necessarily broad, and
a defendant is entitled to pursue all avenues of cross-examination reasonably
calculated to expose a witness's bias, interest, or motive to testify. Carroll, 916
S.W.2d at 497. The Texas Court of Criminal Appeals has held that this "rule
encompasses all facts and circumstances which, when tested by human experience,
tend to show that a witness may shade his testimony for the purpose of helping to
establish one side of the cause only." Id. at 497-98 (quoting Jackson v. State, 482
S.W.2d 864, 868 (Tex. Crim. App. 1972)) (emphasis omitted).

 Appellant argues that he was entitled to impeach E.C. about the fact that, at the
time of trial, she was on deferred adjudication for a felony drug offense. To support
his argument, appellant relies on Davis v. Alaska. See 415 U.S. 308, 94 S. Ct. 1105
(1974). In Davis, the State moved for a protective order to prevent the defense from
exposing that a key witness for the State, Richard Green, was on juvenile probation
after having been adjudicated a delinquent for burglarizing two cabins. Id. at 310-11,
94 S. Ct. at 1107. In opposing the protective order, defense counsel made it clear that
he would cross-examine Green about his probationary status only to show that Green
was helping the police at the same time he was on probation so that defense counsel
could later argue that Green was acting out of fear or concern for his probation. Id.
at 311, 94 S. Ct. at 1108. The trial court, however, granted the State's motion for a
protective order. Id. at 311, 94 S. Ct. at 1108. On appeal, the United States Supreme
Court concluded that, although it could not speculate as to whether the jury would
have accepted defense counsel's argument, the jurors were entitled to hear the defense
theory "so that they could make an informed judgment as to the weight to place on
Green's testimony which provided 'a crucial link in the proof . . . of petitioner's act.'" 
Id. at 317, 94 S. Ct. at 1111 (quoting Douglas v. Alabama, 380 U.S. 415, 419, 85
S. Ct. 1074, 1077 (1965)). 

 Davis is distinguishable from the case at bar. In Davis, Green was on probation
for burglary both at the time of the trial and at the time of the events about which he
testified. Id. at 310-11, 94 S. Ct. at 1107. The defendant in Davis also was charged
with burglary in a separate incident in which the stolen property was found near
Green's home. Id. at 309, 94 S. Ct. at 1107. Thus, the defense argued, when Green
testified for the State, he could have been doing so out of fear or concern for his
probationary status: "Not only might Green have made a hasty and faulty
identification of petitioner to shift suspicion away from himself . . ., but Green might
have been subject to undue pressure from the police and made his identifications
under fear of possible probation revocation." Id. at 311, 94 S. Ct. at 1108. 

 Here, E.C. could not have been trying to shift any suspicion away from herself
because she was the victim. See Gilmore v. State, 871 S.W.2d 848, 851 (Tex.
App.--Houston [14th Dist.] 1994, no pet.) (distinguishing Davis on basis that State's
witness "could not have been trying to shift the suspicion away from himself because
he was the victim."). Furthermore, in Davis, Green was crucial to the State's case:
he had identified the defendant in a lineup and had testified that he had seen the
defendant near the location where the stolen property was found. See Davis, 415 U.S.
at 310, 94 S. Ct. at 1107. Thus, the accuracy and truthfulness of Green's testimony
were key elements in the State's case because his testimony was a "crucial link in the
proof . . . of petitioner's act." See Gilmore, 871 S.W.2d at 851 (quoting Davis, 415
U.S. at 317, 94 S. Ct. at 1111). Here, E.C.'s testimony was not a crucial link in the
proof of appellant's act. She was unable to definitively identify appellant before trial,
and the State did not ask her to make an identification at trial; her testimony about the
state-shaped necklace was her only contribution to his identification as the burglar. 
Appellant's videotaped statement, in which he admitted entering E.C.'s home, and
appellant's print found at the scene constituted direct evidence that appellant
committed the offense. Moreover, even though E.C. was the only eyewitness, her
testimony about the assault was cumulative of the testimony of Nurse Bufford and
Officer Horace, thus lessening the importance of E.C.'s testimony about the assault. Finally, E.C. gave a statement about the assault to Officer Horace and Nurse
Bufford immediately after the assault occurred, but before she was arrested. Thus,
even if her testimony had been important to the State's case, her testimony about the
assault comports with what she told Nurse Bufford and Officer Horace after the
assault but before she was arrested and placed on deferred-adjudication probation; she
could have gained no advantage for herself merely by repeating that testimony. See
Hall v. State, 663 S.W.2d 154, 158 (Tex. App.--Fort Worth 1983, no pet.) (holding
that trial court did not err in refusing to allow defendant to introduce evidence of
witness's pending indictment when witness's testimony regarding defendant's
participation in murder was virtually identical to witness's written statement, which
was sworn to on day of murder and prior to offense for which witness was indicted).

 Moreover, appellant presented no evidence to show that E.C. was subject to
undue pressure from the State to testify against him. See Davis, 415 U.S. at 311, 94
S. Ct. at 1108; Brooks v. State, 690 S.W.2d 61, 64 (Tex. App.--Houston [14th Dist.]
1985, no pet.). Indeed, at a hearing held outside the presence of the jury, E.C.
testified that, since her arrest, there had been no discussion about her being a witness
in appellant's case: the prosecutor in appellant's case had not discussed her case with
her and her probation officer had not spoken with her about her testimony in
appellant's case, and she testified that the fact that she was on probation would have
no effect on her testimony. Thus, appellant could only have used evidence of E.C.'s
deferred-adjudication probation to generally impeach her character as a truthful
person, a purpose not protected under Davis. See Davis, 415 U.S. at 311, 94 S. Ct.
at 1108; see also Warren v. State, 514 S.W.2d 458, 465 (Tex. Crim. App. 1974),
overruled on other grounds, Reed v. State, 744 S.W.2d 112 (Tex. Crim. App. 1988).

 For the foregoing reasons, it is not clear that Davis applies to appellant's case
and that appellant had a right under Davis to impeach E.C. with evidence of her
deferred adjudication probation. Therefore, we cannot conclude that the trial court
erred. Furthermore, even if Davis does apply, we conclude that any error arising from
the trial court's refusal to allow appellant to cross-examine E.C. regarding her
deferred adjudication-probation was harmless.

 As with other constitutional errors, a violation of the Confrontation Clause is
subject to harmless error analysis. Shelby v. State, 819 S.W.2d 544, 546 (Tex. Crim.
App. 1991) (citing Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438). Because a
violation of the right to cross-examination under the Confrontation Clause necessarily
means that the testimony was not permitted before the fact finder, the Supreme Court
in Van Arsdall was called upon to develop a harmless error analysis for when
evidence had been excluded. Id. at 547. The Court established a three-pronged test. 
 First, we must assume that the damaging potential of the cross-examination was
fully realized. Id. (citing Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438). Second,
with that assumption in mind, we must review the error in connection with the
following factors: (1) the importance of the witness's testimony in the prosecution's
case; (2) whether the testimony was cumulative; (3) the presence or absence of
evidence corroborating or contradicting the testimony of the witness on material
points; (4) the extent of cross-examination otherwise permitted; and (5) the overall
strength of the prosecution's case. Id. (citing Van Arsdall, 475 U.S. at 684, 106 S. Ct.
at 1438). Finally, in light of the first two prongs, we must determine whether the
error was harmless beyond a reasonable doubt. Id. (citing Van Arsdall, 475 U.S. at
684, 106 S. Ct. at 1438; Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828
(1967)).

 We begin with the presumption that the precluded cross-examination would
have demonstrated any possible bias or interest that E.C. may have held to testify on
the State's behalf or that she believed that her testimony might be of later benefit. See
id. (citing Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438). Next, with this
assumption in mind, we review the error in connection with the five Van Arsdall
factors.

 Importance of E.C.'s Testimony to the Prosecution's Case

 E.C.'s testimony was of limited importance to the State. She was unable to
definitively identify appellant before trial, and the State did not ask her to make an
identification at trial; her testimony about the state-shaped necklace was her only
contribution to his identification as the burglar. Rather, the State relied on appellant's
videotaped statement, in which he admitted entering E.C.'s home, and appellant's
print found at the scene to identify him as the burglar.

 Furthermore, although she was the only eyewitness, E.C. described the assault
to both Officer Horace and Nurse Bufford, who later recounted her description to the
jury. Thus, E.C.'s testimony about the assault was cumulative of the testimony of
Officer Horace and Nurse Bufford, thereby lessening the importance of E.C.'s
testimony about the assault.

 Whether E.C.'s Testimony Was Cumulative

 As we just discussed, E.C.'s testimony about the assault was cumulative of
Officer Horace's and Nurse Bufford's testimony about what E.C. had told them about
the assault. However, E.C. was the only witness to testify that the man who had
entered her home and assaulted her was wearing a state-shaped necklace.


 Whether Other Evidence Corroborated or Contradicted E.C.'s Testimony on 

 Material Points


 In his videotaped statement, appellant admitted entering E.C.'s home, but
denied touching her.

 Whether Cross-Examination Was Otherwise Permitted

 Appellant was otherwise permitted to fully cross-examine E.C.

 

 The Overall Strength of the Prosecution's Case

 Several pieces of evidence linked appellant to the burglary. He admitted that
he entered E.C.'s home, and his print was found at the scene. E.C. further linked
appellant to the crime with her testimony that the man who had entered her home and
assaulted her was wearing a state-shaped necklace, which appellant was wearing
when he was arrested. Although E.C. was the only eyewitness, and she was initially
unable to identify him before trial and was not asked to identify him at trial, her
testimony about the assault comports with what she told Officer Horace and Nurse
Bufford after the assault but before she was arrested and placed on deferred-adjudication probation. Therefore, the prosecution's case against appellant was
strong.

 Finally, in light of the first two prongs, we look to whether the trial court's
error was harmless beyond a reasonable doubt. Shelby, 819 S.W.2d at 547 (citing
Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438; Chapman, 386 U.S. at 24, 87 S. Ct.
at 828). E.C.'s only contribution to the State's case was her testimony that the man
who entered her home and assaulted her was wearing a state-shaped necklace, which
appellant was wearing when he was arrested. The rest of her testimony--namely, that
about the assault--had already been admitted into evidence through the testimony of
Officer Horace and Nurse Bufford. Notably, this portion of E.C.'s testimony was
consistent with what she had told Officer Horace and Nurse Bufford after the offense
but almost two months before she was arrested and placed on deferred adjudication
probation. Thus, given the other evidence linking appellant to the crime--his
confession and print--the jury could have convicted appellant without E.C.'s
testimony. We conclude, therefore, that even if the trial court erred when it precluded
appellant from cross-examining E.C. about her deferred-adjudication probation, any
error did not contribute to appellant's conviction beyond a reasonable doubt. See id.
(citing Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438; Chapman, 386 U.S. at 24,
87 S. Ct. at 828).

 We overrule appellant's third point of error.

Jury Consideration of Voluntariness of Statement

 In his fourth point of error, appellant argues that because he was entitled to
"fully and fairly litigate" the voluntariness of his videotaped statement to police, the
trial court erred when it denied appellant the opportunity to cross-examine Officer
Razo on whether appellant had tried to terminate his interrogation when the testimony
showed that the statement was not voluntary, which was an issue for the jury to
decide. To support his argument, appellant cites article 38.22, section 6, of the Texas
Code of Criminal Procedure, which, he argues, entitled him to have the jury consider
the voluntariness of his statement to police, even though the trial court had already
ruled that the statement was voluntary and, therefore, admissible. See Tex. Code
Crim. Proc. Ann. art. 38.22, § 6 (Vernon 2005); Vanderbilt v. State, 563 S.W.2d
590, 596-97 (Tex. Crim. App. 1978).

 Article 38.22, section 6, sets forth a two-step procedure for determining the
voluntariness of a statement. First, the trial court must, in the absence of the jury,
make an independent finding as to whether the statement was made voluntarily. Tex.
Code Crim. Proc. Ann. art. 38.22, § 6. If the trial court finds that the statement was
made voluntarily, evidence pertaining to its voluntariness may be submitted to the
jury, and the court must instruct the jury that it may not consider the confession
unless it believes, beyond a reasonable doubt, that the confession was voluntarily
made. Id. A defendant is not entitled to an instruction on the voluntariness of a
statement in every case, however, but only when the evidence admitted at trial raises
a question as to its voluntariness. Id. art. 38.22, § 7 (Vernon 2005). "Raising an issue
as to the voluntariness of a confession means that some evidence must be presented
to the jury that the confession was not given voluntarily." Hernandez, 819 S.W.2d
at 812.

 Here, appellant argued at trial that he was entitled to cross-examine Officer
Razo about statements that appellant made during his interrogation that showed that
he wanted to end the questioning. (8) The court ruled, however, that this evidence was
inadmissible hearsay. (9) 

 Under article 38.22, section 6, a defendant is entitled "to offer evidence before
the jury as to the voluntariness of a confession despite the judge's earlier findings
thereon to the contrary." Vanderbilt, 563 S.W.2d at 596-97 (quoting Ross v. State,
504 S.W.2d 862, 864 (Tex. Crim. App. 1974)); see also Tex. Code Crim. Proc.
Ann. art. 38.22, § 6. Thus, although appellant is correct in arguing that article 38.22
authorizes him to submit evidence to the jury pertaining to the voluntariness of his
statement, (10) the testimony appellant intended to elicit from Officer Razo was
inadmissible hearsay, (11) and the trial court did not err in excluding its admission. See
Tex. R. Evid. 802; see also Davis v. State, 970 S.W.2d 758, 760-61 (Tex.
App.--Austin 1998, pet. ref'd) (holding that appellant's own statement, when offered
by appellant, was self-serving and not admissible under the declaration-against-penal-interest exception to the hearsay rule). 

 Moreover, even if the trial court had erred, the exclusion of this evidence did
not harm appellant. Article 38.22 is a procedural evidentiary rule rather than a
substantive one. Davidson v. State, 25 S.W.3d 183, 186 n.4 (Tex. Crim. App. 2000). 
Thus, we apply Rule 44.2(b) of the Texas Rules of Appellate Procedure and will
disregard any error if the error does not affect appellant's substantial rights. See Tex.
R. App. P. 44.2(b); Davidson, 42 S.W.3d at 167. A substantial right is affected when
the error had a substantial and injurious effect or influence in determining the jury's
verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). In this case, we
have already determined under appellant's second point of error that neither of the
statements made by appellant about which appellant wanted to cross-examine Officer
Razo was an unambiguous invocation of his right to end the interrogation. The
statements indicated only that appellant was hungry and wanted to eat, not that he
wanted to end the interrogation. Given this evidence, we conclude that the trial
court's refusal to allow appellant to present this evidence did not have a substantial
and injurious effect or influence in determining the jury's verdict. See King, 953
S.W.2d at 271.

 We overrule appellant's fourth point of error.

Latent Print Evidence

 In points of error five through eight, appellant argues that the trial court erred
when it admitted hearsay testimony in violation of his right to confrontation and the
Texas Rules of Evidence. We will first address whether this evidence was
inadmissible hearsay.

 We review a trial court's decision to admit or exclude evidence under an abuse
of discretion standard. Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). 
We will not reverse a trial court's ruling on the admission of evidence unless that
ruling falls outside the zone of reasonable disagreement. Burden v. State, 55 S.W.3d
608, 615 (Tex. Crim. App. 2001).

 As a general rule, hearsay evidence is inadmissible unless it falls within one of
several exceptions. See Tex. R. Evid. 802, 803. "Hearsay" is a statement, other than
one made by the declarant while testifying at trial, offered in evidence to prove the
truth of the matter asserted. Id. 801(d). Thus, a statement not offered to prove the
truth of the matter asserted is not hearsay. Davis v. State, 169 S.W.3d 673, 675 (Tex.
App.--Fort Worth 2005, no pet.) (citing Dinkins v. State, 894 S.W.2d 330, 347-48
(Tex. Crim. App. 1995)). 

 Officer Benningfield's Testimony

 In his sixth point of error, appellant argues that the trial court erred when it
permitted Officer Benningfield to testify that two print experts in her laboratory,
Officers Stairhime and Saldivar, both of whom had reached a conclusion regarding
a latent print found at the scene, had reached the same conclusion. This evidence,
coupled with Officer Stairhime's later testimony that the print belonged to appellant,
effectively informed the jury that Officer Saldivar had also determined that the print
belonged to appellant. Because testimony about Officer Saldivar's conclusion,
according to appellant, constituted an out-of-court statement offered for the truth of
the matter asserted, Officer Benningfield's testimony constituted inadmissible
hearsay. See Tex. R. Evid. 801(d). The State responds that Officer Benningfield's
testimony is not hearsay because it does not reveal an out-of-court statement made by
Officer Stairhime or Officer Saldivar. The State relies on Head v. State to support
its argument. See 4 S.W.3d 258 (Tex. Crim. App. 1999). In Head, the defendant was
charged with sexually assaulting his live-in girlfriend's 14-year-old daughter. Id. at
259. After revealing the abuse to her aunt, the girl spoke with an investigator,
M. Peterson, from the district attorney's office. Id. at 259-60. At trial, the State
called the victim's aunt, Peterson, and the victim to testify, in that order. Peterson
testified as follows:

 [STATE]: Were the statements [the victim's aunt and the
victim's mother] gave consistent with-


 [DEFENSE]: Objection, Your Honor. Calls for hearsay.


 THE COURT: Overruled.


 [STATE]: Were the statements they gave to you consistent
with the facts . . . related to you by [the victim]?


 [PETERSON]: Yes.


Id. at 260. The Court of Criminal Appeals held that the trial court did not abuse its
discretion in allowing the jury to hear this testimony, explaining that:

 The trial court could have reasonably concluded that Peterson's
testimony, when taken in context, did not lead to any inescapable
conclusions as to the substance of the out-of-court statements. 
Specifically, the disputed testimony revealed only that the three
statements related basically the same facts; it did not reveal the
substance of what those facts were. Neither did any other evidence, at
that point in the trial, indicate the contents of any of the three
statements, what facts the statements had in common, or how any of the
facts were consistent.


Id. at 262. 

 The Head case is very similar to the instant case. Here, Officer Benningfield
testified on direct examination that, upon re-examining the latent print found on the
window screen, she was unable to attribute it to appellant or to determine that it did
not belong to him--i.e., it was "unusable." Because she could not come to a
conclusion, she asked other examiners to examine the print:

 [BENNINGFIELD]: . . . there were five of us that looked at it.

 [STATE]: Were there two that were able to come to a
conclusion?


 [BENNINGFIELD]: Yes.


 [STATE]: And who were they?


 [BENNINGFIELD]: [W.] Stairhime and [R.] Saldivar.


 [STATE]: Did they come to the same conclusion?


 [DEFENSE]: Your Honor, I object to that as being hearsay.


 [COURT]: Objection to that question is overruled.



 [STATE]: Without going into what their conclusion was,
did these two individuals, [W.] Stairhime and
[R.] Saldivar, come to the same conclusion.


 [DEFENSE]: Again, Your Honor, I object. It has to be
hearsay and it denies my right to
confrontation.


 [COURT]: Overruled. I'll allow her to answer that
question.


 [BENNINGFIELD]: Yes, they did.


 As in Head, the trial court here could have reasonably concluded that Officer
Benningfield's testimony, when taken in context, did not lead to any inescapable
conclusions as to the substance of Officers Stairhime's and Saldivar's conclusions
about the print. See id. at 262. The only information imparted by Officer
Benningfield's testimony was that Officers Stairhime and Saldivar had examined the
print and had reached a conclusion, and that their conclusions were the same. This
testimony was not hearsay, and the trial court did not abuse its discretion in
overruling appellant's objection. See Torres, 71 S.W.3d at 760; Head, 4 S.W.3d at
259-62.

 We overrule appellant's sixth point of error.

 Officer Stairhime's Testimony

 In his eighth point of error, appellant contends that the trial court erred when
it permitted Officer Stairhime to indirectly testify that Officer Saldivar had agreed
with his conclusion that a fingerprint found at the scene belonged to appellant. 

 On direct examination, Officer Stairhime testified that the latent print, which
Officer Benningfield had deemed unusable, did, in his opinion, belong to appellant.

 [STATE]: And because you had over ten [characteristic points
on the fingerprint], your HPD protocol is that you
require two examiners to look at it, correct?


 [STAIRHIME]: That's correct.


 [STATE]: And did another examiner look at this?


 [STAIRHIME]: Yes, they [sic] did.


 [DEFENSE]: I object to that as being hearsay and [it] denies the
right of confrontation, Your Honor.


 [COURT]: Overruled.


 [STATE]: Did another examiner look at this print?


 [STAIRHIME]: Yes he did.


 [STATE]: And who was that?


 [STAIRHIME]: [R.] Saldivar.


 [STATE]: And did Mr. Saldivar have a different conclusion
from your conclusion?


 [DEFENSE]: I object to that as being hearsay and [it] denies the
right of confrontation.


 [COURT]: Sustained.


 [STATE]: Without going into what he said, is there anything
that - is there anything about Saldivar's conclusion
that prevented you from testifying that it was a
match to this defendant?


 [DEFENSE]: Again, Your Honor, I would object to that. The
same objection.


 [COURT]: Sustained.


 [STATE]: Well, of all the six latent print examiners, was
anybody in the latent print lab able to exclude the
defendant, at the Defense's request that you look at
all this?


 [DEFENSE]: I object to that, also, as it denies the right of
confrontation.


 [COURT]: Sustained.


 [STATE]: Well, if you were going to testify in a trial about the
characteristics of a fingerprint and say that it
matched the suspect or anybody as a positive
identification, would it require more than one
examiner to come to the same conclusion?



 [DEFENSE]: Again, Your Honor, I would object that it's a
roundabout way of trying to circumvent the court's
rulings already that it's hearsay and denies the right
of confrontation.


 [COURT]: I'm going to overrule that objection. You may
answer the question.

 

 [STAIRHIME]: Yes. In order for me to come to court and testify to
a positive identification, I would have to have at
least one more examiner . . . come to the same
conclusion. 


 Appellant is correct in arguing that the trial court erred when it permitted
Officer Stairhime to indirectly testify to Officer Saldivar's conclusion about the print. 
In criminal cases, Texas Rule of Evidence 803(8)(B) excludes as inadmissible hearsay
any record, report, statement, or data compilation which sets forth matters "observed
by a police officer and other law enforcement personnel." Tex. R. Evid. 803(8)(B);
Baker v. State, 177 S.W.3d 113, 122 (Tex. App.--Houston [1st Dist.] 2005, no pet.)
(citing Cole v. State, 839 S.W.2d 798, 804-07, 804 n.8 (Tex. Crim. App. 1990) (op.
on reh'g) (holding that full-time forensic chemists employed by Texas Department
of Public Safety were law-enforcement personnel whose reports were not admissible
under public-record hearsay exception (rule 803(8)(B)) or business-record hearsay
exception (rule 803(6))). 

 Here, Officer Stairhime's testimony that the print, in his opinion, belonged to
appellant, taken in conjunction with the previously admitted testimony of Officer
Benningfield that Officers Stairhime and Saldivar both had examined the print and
had reached a conclusion and that their conclusions were the same, necessarily
revealed the substance of Officer Saldivar's conclusion, namely that in his opinion,
the print belonged to appellant. Under Rule 803(8)(B), this is hearsay. See Tex. R.
Evid. 803(8)(B); Baker, 177 S.W.3d at 122. Thus, we conclude that the trial court
abused its discretion when it overruled appellant's objection. See Torres, 71 S.W.3d
at 760.

 Having found that the trial court abused its discretion in overruling appellant's
objection, we must determine whether the error harmed appellant. See Tex. R.
App. P. 44.2(b). The admission of inadmissible hearsay is nonconstitutional error and
will be considered harmless if, after examining the record as a whole, we are
reasonably assured that the error did not affect appellant's substantial rights--i.e., did
not have a substantial and injurious effect or influence in determining the jury's
verdict. See id.; Garcia v. State, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004);
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Moreover, the
improper admission of evidence is harmless if the same or similar evidence is
admitted without objection at another point in the trial. See Leday v. State, 983
S.W.2d 713, 717 (Tex. Crim. App. 1998). 

 When Officer Stairhime's testimony was admitted over appellant's objection,
the jury already knew from Officer Benningfield's testimony that Officers Stairhime
and Saldivar both had examined the print and had reached a conclusion and that their
conclusions were the same; and the jury also knew that it was Officer Stairhime's
opinion that the print belonged to appellant. From this testimony, the jury already
knew, albeit indirectly, that Officer Saldivar had also concluded that the print
belonged to appellant. Thus, Officer Stairhime's testimony that Officer Saldivar had
agreed with his conclusion was cumulative of Officer Benningfield's testimony about
Officers Stairhime's and Saldivar's conclusion. Therefore, any error in the admission
of this testimony was harmless. See Leday v. State, 983 S.W.2d 713, 717 (Tex. Crim.
App. 1998) (improper admission of evidence is harmless if same or similar evidence
is admitted without objection at another point in trial).

 We overrule appellant's eighth point of error.

 Confrontation

 In his fifth and seventh points of error, appellant argues that the trial court erred
when it admitted, in violation of his right to confrontation, (a) Officer Benningfield's
testimony about Officers Stairhime and Saldivar and (b)  Officer Stairhime's indirect
testimony about Officer Saldivar's conclusion. 

 Regarding Officers Benningfield and Stairhime, appellant's right to
confrontation was not denied. Officers Benningfield and Stairhime testified at trial
and the trial court permitted appellant to fully cross-examine them. Cf. Cooper, 95
S.W.3d at 492 (noting that defendant's constitutional right of confrontation is
violated when trial court improperly limits cross-examination of witness). 
Conversely, Officer Saldivar's conclusion about the print was admitted into evidence
indirectly through the testimony of Officer Stairhime. Because Officer Saldivar was
not available to testify, however, appellant was denied his right to cross-examine him,
in violation of his right to confrontation. This error was harmless, however, because
evidence had already been admitted through the testimony of Officer
Stairhime--whom appellant was permitted to fully cross-examine--that the print
belonged to appellant. See Leday, 983 S.W.2d at 717.

 We overrule appellant's fifth and seventh points of error.


Legal Sufficiency

 In his ninth point of error, appellant contends that the evidence was legally
insufficient to support his conviction for burglary of a habitation because the State
failed to establish that he entered E.C.'s house with the intent to commit indecency
with a child.

 The indictment charged that appellant "did . . . unlawfully . . . enter a habitation
owned by [E.C.] . . . and commit or attempt to commit a felony of indecency with a
child." This language tracks the language of Texas Penal Code section 30.02(a)(3),
which states that a person commits burglary if, without the effective consent of the
owner, the person "enters a building or habitation and commits or attempts to commit
a felony, theft, or an assault." Tex. Pen. Code Ann. § 30.02(a)(3) (Vernon 2003). 
This language also tracks the language in the charge to the jury, which instructed: "if
you find from the evidence beyond a reasonable doubt that . . . the defendant,
[appellant], did . . . unlawfully . . . enter a habitation owned by [E.C.] . . . and commit
or attempt to commit a felony of indecency with a child, then you will find the
defendant guilty of burglary of a habitation, as charged in the indictment." The jury's
verdict, therefore, found appellant guilty of burglary of a habitation, in conjunction
with his commission or attempt to commit the underlying felony of indecency with
a child. 

 The State was not required to prove that appellant entered E.C.'s home with
intent to commit indecency with a child; nor was the jury asked to reach a verdict
based on appellant's entry into E.C.'s home with the intent to commit the offense of
indecency with a child. However, the judgment, states that appellant was convicted
of the offense of burglary of a habitation with intent to commit indecency with a
child. See Tex. Pen. Code Ann. § 30.02(a)(1) (Vernon 2003). (12) The language "with
intent" was erroneously included in the judgment. Thus, we will modify the judgment
and affirm it as modified. See Tex. R. App. P. 43.2(b) (a court of appeals may
"modify the trial court's judgment and affirm it as modified"). The judgment is
modified to delete any reference to appellant's intent to commit indecency with a
child. The judgment should reflect the jury's verdict that in committing burglary,
appellant committed or attempted to commit indecency with a child.

 Because appellant's argument rests solely upon the State's failure to prove his
intent to commit indecency with a child and no such proof of intent was necessary,
we overrule appellant's ninth point of error.



Conclusion

 We affirm the judgment of the trial court as modified.



 

 Evelyn V. Keyes

 Justice

 


Panel consists of Justices Taft, Keyes, and Hanks.


Publish. Tex. R. App. P. 47.2(b). 
1. See Tex. Pen. Code Ann. § 30.02(a)(3) (Vernon 2003)
.
2. See id. § 21.11 (Vernon 2003).
3. A latent print is an unintentional print left behind at a crime scene.
4. Officer Saldivar did not testify at trial.
5. 384 U.S. 436, 86 S. Ct. 1602 (1966)
.
6. This standard is less strict than the standard for an accused's invocation of the Fifth
Amendment right to counsel, when police may continue to question an accused after an
unclear or ambiguous invocation of the right to counsel only to ascertain "whether the
accused indeed wants to consult with counsel or wishes to proceed with the interview without
benefit of counsel." Lucas v. State, 791 S.W.2d 35, 46 (Tex. Crim. App. 1989), vacated on
other grounds, 590 U.S. 918, 113 S. Ct. 3029 (1993).
7. At the suppression hearing, appellant also argued, in the alternative, that, if the trial court
were to deny the motion to suppress, certain portions of the videotape should be redacted.
8. These statements were not included on the portion of the videotape of appellant's statement
offered by the State and shown to the jury.
9. Despite the fact that appellant was precluded from cross-examining Officer Razo about
whether appellant had tried to end the interrogation, the court still instructed the jury to
disregard appellant's statement to police if it found that appellant did not give his statement
voluntarily or if it had a reasonable doubt as to its voluntariness.
10. See Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (Vernon 2005).
11. Hearsay is not admissible except as provided by statute, the Texas Rules of Evidence, or
other rules prescribed pursuant to statute. Tex. R. Evid. 802. Appellant cites no authority,
nor can we find any, showing that this evidence is not hearsay or that the evidence falls
within an exception to the hearsay rule.
12. A person commits burglary if, without the effective consent of the owner, the person
"enters a habitation or a building (or any portion of a building) not then open to the public,
with intent to commit a felony, theft, or an assault . . . ." Tex. Pen. Code Ann. § 30.02(a)(1)
(Vernon 2003).