**John Henry COOPER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–95–00308–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 27, 1997.

Rehearing Overruled Aug. 18, 1997.

Discretionary Review Refused
March 11, 1998.

W. Troy McKinney, J. Gary Trichter, Houston, for Appellant.

Bonnie J. Bonnicksen, Houston, for Appellee.

Before HEDGES, COHEN and TAFT, JJ.

## OPINION

HEDGES, Justice.

A jury convicted appellant, John Henry Cooper, of driving while intoxicated (DWI). The trial court sentenced him to 18 months in jail, probated for two years community supervision, and assessed a $2,000 fine, reduced to $1,000. In three points of error, appellant contends that (1) the trial court erred in failing to suppress the audio portion of a video taken at the police station in violation of his Fifth and Fourteenth Amendment rights under the United States Constitution and his Article I, Section 10 rights of the Texas Constitution, and (2) the trial court

erred in refusing to admit relevant evidence that one of the arresting officers had been involved in several accidents. We reverse.

## FACTS

On June 15, 1994, Houston police stopped appellant after seeing him pull his vehicle too far into an intersection. As one of the officers approached appellant's car, the officer smelled alcohol. After appellant identified himself, the officers videotaped appellant performing field sobriety tests. They subsequently arrested him. At the police station, appellant was videotaped during the reading of his statutory warnings.[1] Appellant filed a written motion to suppress the audio portion of the station video, claiming that there was a clear invocation of his right to counsel and his right to terminate the interview. The trial court denied the motion on the basis that there was no clear invocation of counsel and that his right to terminate the interview had not yet arisen.

## SUPPRESSION OF AUDIO PORTION OF VIDEO

In points of error one and two, appellant contends that the trial court erred in failing to suppress the audio portion of a video taken at the police station in violation of his Fifth and Fourteenth Amendment rights under the United States Constitution and Article I, Section 10 under the Texas Constitution. Appellant argues that the video demonstrates that during the interview, he clearly and unequivocally requested his attorney, he exercised his right to remain silent, and he invoked his right to terminate the interview. The trial court, he argues, should have suppressed the audio portion of the video because his request for an attorney, his silence, and his request to terminate the interview cannot be used as evidence of his guilt.

### Standard of Review

The standard for reviewing a trial court's ruling on a motion to suppress evidence is abuse of discretion. *Long v. State*, 823 S.W.2d 259, 277 (Tex.Crim.App.1991). At a hearing on a motion to suppress, the

---

1. Tex.Code Crim P.Ann. art. 38.22, § 2 (Vernon 1979).

trial court is the sole trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990); *Brooks v. State*, 830 S.W.2d 817, 820 (Tex.App.—Houston [1st Dist.] 1992, no pet.). The trial court may choose to believe or disbelieve any or all of a witness' testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex.Crim.App.1996). On appellate review, the evidence presented at the suppression hearing is viewed in the light most favorable to the trial court's ruling to determine whether the trial court abused its discretion in denying the motion to suppress. *Whitten v. State*, 828 S.W.2d 817, 820 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). Appellate courts are not at liberty to disturb any finding that is supported by the record. *Green*, 934 S.W.2d at 98; *Johnson v. State*, 803 S.W.2d 272, 287 (Tex.Crim.App.1990).

**Right to Counsel and Termination**

 Once a suspect has invoked his right to counsel, all interrogation by the police must cease until counsel is provided or until the suspect himself re-initiates conversation. *Minnick v. Mississippi*, 498 U.S. 146, 153, 111 S.Ct. 486, 491, 112 L.Ed.2d 489 (1990); *Dinkins v. State*, 894 S.W.2d 330, 350 (Tex.Crim.App.1995). The right to counsel is invoked when a person indicates he or she desires to speak to an attorney or to have an

attorney present during questioning. *Dinkins*, 894 S.W.2d at 351. An invocation of the right to counsel must be clear and unambiguous; the mere mention of the word "attorney" or "lawyer," without more, does not automatically invoke the right to counsel. *Id.; Robinson v. State*, 851 S.W.2d 216, 223 (Tex.Crim.App.1991). While there are no magical words required to invoke an accused's right to counsel, a suspect must express a definite desire to speak to someone, and that person be an attorney. *Dinkins*, 894 S.W.2d at 352.

 The right to terminate questioning is among the procedural safeguards established by *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966); *Watson v. State*, 762 S.W.2d 591, 596 (Tex.Crim.App.1988). If an individual indicates in any manner at any time before or during questioning that he wishes to remain silent, the interrogation must cease. *Miranda*, 384 U.S. at 473–74, 86 S.Ct. at 1627; *Watson*, 762 S.W.2d at 596. There need not be a formal invocation of one's right to terminate an interview. *Watson*, 762 S.W.2d at 598. Anything said or done by the appellant that could reasonably be interpreted as a desire to invoke that right should be sufficient to halt questioning. *Id.*

 When appellant was taken to the station, the police videotaped[2] the reading of

---

2. In 1983, the legislature provided:

 (a) Each county with a population of 25,000 or more according to the most recent federal census shall purchase and maintain electronic devices capable·of visually recording a person arrested within the county for an offense under Article 6701*l*–1, Revised Statutes, or Subdivision (2), Subsection (a), Section 19.05, Penal Code.

 (b) The sheriff of the county shall determine upon approval by the county commissioners court the number of devices necessary to ensure that a peace officer arresting a defendant for an offense listed in Subsection (a) of this section may visually record the defendant's appearance within a reasonable time after the arrest.

 (c) The fact that an arresting officer or other person acting on behalf of the state failed to visually record a person arrested for an offense listed in Subsection (a) of this section is admissible at the trial of the offense if the offense occurred in a county required to purchase and maintain electronic devices under this section.

Act of May 20, 1983, 68th Leg., R.S., ch. 303, § 24, 1983 Tex.Gen.Laws 1568, 1605.

The legislature did not give section 24 of the Act an official article number in the Revised Statutes, thus never making it a part of article 6701*l*–1, which was an official article number. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655 (Tex.1989) (explaining difference between official and unofficial article numbers). Also, West Publishing Company never assigned an unofficial article number to section 24, but listed it as a statutory note. *See* Tex.Rev.Civ. Stat.Ann. art. 6701*l*–1 hist. note (Vernon Supp. 1994). When the 1993 Penal Code and the 1995 Transportation Code were enacted, the legislature repealed article 6701*l*–1. Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.15, 1993 Tex.Gen.Laws 3586, 3704 (repealing article 6701*l* 1); Act of May 29, 1993, 73d Leg., R.S., ch. 886, § 8, 1993 Tex.Gen.Laws 3515, 3523 (amending article 6701*l*–1); Act of May 29, 1995, 74th Leg., R.S., ch. 318, § 63, 1995 Tex.Gen.Laws 2734, 2755 (repealing article 6701*l*–1 as amended in 1993). Since the legis-

his statutory warnings. At the beginning of the video, the officer conducting the video and appellant briefly argued about why he was being videotaped and where he should stand. The officer began reading appellant his warnings, and appellant indicated his understanding that he had a right to remain silent and that any statement he made could be used against him. After the officer began to read his third warning,[3] the following exchange took place:

A: Where is he?

Q: Did you understand what I just said?

A: No, I'm saying where is he?

Q: Where is who?

A: My lawyer.

Q: I haven't asked you any questions yet.

A: Yes, you did.

Q: No, I haven't.

A: Yes, sir. Where is my lawyer? Where is he? I don't see him standing here?

Q: If you are unable to employ one, one will be appointed for you. Do you understand?

A: I'm not answering any questions.

Q: I don't care.

A: I don't care either. Where is he? You stated "my lawyer...." Where is he?....

Q: Are you done now?

A: I'm done. Are you done?

Q: I will be in a minute.

A: I've been polite to you .... good night.

Q: You have the right to terminate the interview at any time ...

A: I terminate it. Good night.

Q: Do you understand these rights?

A: No, I don't. About three of them.

Q: Which ones?

A: I terminate. Good night

Q: Which ones didn't you understand?

A: Good night.... I didn't do anything wrong.

Q: I didn't arrest you. You don't have to prove anything to me.

A: Not to you. Good night.... I didn't do anything wrong with you or with those people.

Q: Which rights did you not understand. Could you clarify?

A: I'm not clarifying.

Q: So, did you understand all of them?

A: No. Good night. I'm not understanding anything until my lawyer is present.

Q: All right. It's terminated.[4]

Appellant did not invoke his right to have a lawyer present until the conclusion of the video. Appellant's response, "Where is he," was not an unequivocal assertion of his right to counsel; rather, it was a facetious expression of defiance. Nor was his reiteration of that statement several times throughout the video an unequivocal invocation. He affirmatively invoked his right only at the conclusion of the video when he stated, "I'm not understanding anything until my attorney is present." At that point, the officer terminated the video.

▆▆▆▆ Appellant did, however, invoke his right to terminate the interview when he stated, "I'm not answering any questions," and he continued to invoke that right throughout the remainder of the video. Evidence of invoking the right to terminate an interview is inadmissible as evidence of guilt. *See Hardie v. State*, 807 S.W.2d 319, 322 (Tex.Crim.App.1991). Although *Hardie* referred specifically to invocation of the right to counsel, we find no reason to differentiate an invocation of the right to terminate. We find, therefore, that the trial court erred in admitting into evidence the audio portion

lature did not officially incorporate section 24 into article 6701*l*–1, section 24 has not been repealed. Section 24 is still "the law" even though it has not been codified.

3. "You have the right to have a lawyer present to *advise* you prior to and during any questioning. Do you understand?"

4. We did not have an official transcript of the videotape to review. We therefore do not ensure the accuracy of every word in the dialogue, but do note that the instances where appellant invoked his rights to counsel and terminate the interview are accurate.

from the point appellant invoked his right to terminate until the end of the video tape.

**Harmful error**

■ Because we find that the trial court erred in admitting the audio portion of the videotape from the point where appellant stated, "I'm not answering any questions," until the end of the videotape, we must determine whether such error was harmful to appellant. If the appellate record in a criminal case reveals error in the proceedings below, the appellate court must reverse the judgment under review unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. TEX. R.APP.P. 81(b)(2); *Taylor v. State,* 755 S.W.2d 548, 550 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). The impact of the error cannot be properly evaluated without examining its interaction with the other evidence. *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989). The entire record must be considered. *Id.* The evidence is viewed in a neutral, impartial, and even-handed fashion, not in the light most favorable to conviction. *Id.*

■ We analyze the harm of the trial court's error under the standard set forth in *Harris.* That case dictates that reversal of a conviction is mandated unless the appellate court concludes beyond a reasonable doubt that the error did not contribute to the conviction or the punishment assessed. *Harris,* 790 S.W.2d at 587. We must look at the following factors:

(1) the source of the error;

(2) the nature of the error;

(3) whether or to what extent it was emphasized by the State;

(4) its probable collateral implications;

(5) how much weight a juror would probably place on the error; and

(6) whether declaring the error harmless would encourage the State to repeat it with impunity.

*Id.* We are mindful that "[i]f overwhelming evidence dissipates the error's effect upon the jury's function in determining the facts so that it did not contribute to the verdict then the error is harmless." *Id.*

■ In this case, the source of the error was the State's offering and the trial court's admitting into evidence the audio portion of the videotape from the point at which appellant invoked his right to terminate until the end of the video. The nature of the error was to emphasize appellant's defiant attitude expressed in verbal combat with the officer. The probable collateral implication was that appellant was guilty because he wanted to terminate the interview. Although the State did not emphasize appellant's invocation directly in its closing argument, it did emphasize that appellant's repeated utterance of "good night" was an indication of intoxication.

In analyzing the weight a juror would probably place on the error, we look at the other evidence of appellant's guilt. Officers Lindsey and Jones, the arresting officers, testified that they stopped appellant for a traffic violation and that as they approached the car, both smelled alcohol on appellant's breath. Officer Jones testified that appellant's speech was slurred and his eyes appeared bloodshot. Officer Lindsey videotaped Officer Jones administering four field sobriety tests: Horizontal Gaze Nystagmus (HGN), head tilt, heel to toe, and the one leg stand. Officer Jones admitted that he performed the HGN improperly. He stated that appellant performed poorly on all the field tests. Officer Lindsey, who observed the tests from the car, stated that appellant performed the tests poorly. At the station, appellant refused a breath test but requested a blood test. Officer York, who was in charge of the intoxilyzer room, testified that appellant had alcohol on his breath and had slurred speech. Officer Miller, who videotaped appellant at the station, stated that he smelled alcohol on appellant's breath. Officer Miller testified that appellant's attitude was combative and that during the video, appellant leaned against the wall for support. In his opinion, appellant's attitude and conduct was that of an intoxicated person.

The videotape reflects appellant's combative attitude. Appellant's appearance and statements made during the video, however,

are not overwhelmingly indicative of intoxication. His speech did not appear to be slurred, nor did he seem to need the support of a wall. Viewing the evidence in a neutral, impartial, and even-handed fashion, we cannot find that there was other overwhelming evidence that he was illegally intoxicated. We are therefore not convinced beyond a reasonable doubt that a juror would not place significant weight on appellant's invocation of his right to terminate the interview.

We cannot say that if we were to declare this error harmless, the State would not be encouraged to offer this kind of impermissible evidence in the future. *See Hardie*, 807 S.W.2d at 322. We find, therefore, that the trial court's error in not suppressing the audio portion of the videotape from the point where appellant invoked his right to terminate until the end of the videotape harmed appellant.

We reject the State's argument that appellant failed to preserve error because he failed to object with specificity and because he asserted inconsistent legal theories. Relying on Texas Rule of Appellate Procedure 52(a),[5] the State contends that appellant failed to present a timely request, objection, or motion to the trial court, stating the specific grounds for having the audio portion of the videotape suppressed. We agree that appellant's request did not specifically state that he wanted to have the audio portion of the videotape suppressed. But it is clear from the record that the specific grounds for his motion were

apparent to the trial judge,[6] and error was properly preserved when appellant objected to the introduction of the video at trial.

██ We also find that appellant has not asserted inconsistent legal theories on appeal. Appellant objected by way of written motion to the introduction of the audio portion of the videotape, relying on both the Texas Constitution's Article I, Section 10 and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). At trial, however, appellant's counsel stated "... under our case law, the jury shouldn't be allowed to hear the invocation." The failure of appellant's counsel to specifically verbalize at trial his reliance on the state or federal constitution does not waive his objection because the trial court was given an opportunity to rule on it. *See Rezac v. State*, 782 S.W.2d 869, 871 (Tex.Crim.App.1990); *Little v. State*, 758 S.W.2d 551, 563–64 (Tex.Crim.App.1988). As shown in footnote six above, appellant's citation of *Edwards* sufficed to make the trial court aware of his reliance on both the Fifth and Fourteenth Amendments to the United States Constitution. *See Edwards*, 451 U.S. at 483–87, 101 S.Ct. at 1884–86. A general objection is sufficient to preserve error for appeal when the specific ground is apparent from the context. *See Hardie*, 807 S.W.2d at 320–21 n. 5 (citing *Zillender v. State*, 557 S.W.2d 515 (Tex.Crim.App.1977)).

Because we sustain points of error one and two, we do not reach the merits of point of error three.

---

**5.** "In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make *if the specific grounds were not apparent from the context."* (Emphasis added.)

**6.** MR. TRICHTER: ... There is a motion to suppress evidence which concerns itself ... with ... an invocation of Mr. Cooper's rights which occurred on the video tape.... The station video is very evident that he requests an attorney.

THE COURT: All right. Well, I'll look at that video after the jury has been dismissed for the afternoon and make that determination and if he's invoked his right to counsel, *then the audio portion thereof will be reduced* so that it may not be broadcasted to the jury, but the video portion, of course, will be available. (Emphasis added.)

. . . .

THE COURT: ... And Mr. Trichter, if you'll state for the record the basis upon which you asked me to review that?
MR. TRICHTER: On the station video, there's an invocation of counsel, under our case law, the jury shouldn't be allowed to *hear* the invocation. (Emphasis added.)
THE COURT: All right. I thought that that was the reason upon which you asked me to review that. After reviewing the video tape, I find that there was ... no direct request for an attorney under the *Miranda* warning and your request to have audio portion thereof is denied. All right.
MR. TRICHTER: Judge, he also says he wants to terminate the interview. The rights are the same whether they be the first part of *Miranda* or the second part of *Miranda*.
THE COURT: Well, until such time as the opportunity is given and the instructions are given to have field tests stated does not give rise to terminate the interview.

We reverse the judgment of the trial court and remand the case for a new trial consistent with this opinion.

TAFT, J., concurs.

TAFT, Justice, concurring.

My concurring opinion urges the Court of Criminal Appeals to reconsider the harmless error analysis established in *Harris v. State*, 790 S.W.2d 568 (Tex.Crim.App.1989). The approach in *Harris* is confusing because it includes factors, such as whether declaring error harmless would encourage the State to repeat it with impunity, which have no logical relation to a harm analysis. Indeed, the majority opinion relies in part on the "encourage the State to repeat it with impunity" factor in finding harm, and thus reversible error, in this case.

As set out in the majority opinion, the *Harris* factors include:

1. the source of the error;
2. the nature of the error;
3. whether or to what extent it was emphasized by the State;
4. its probable collateral implications;
5. how much weight a juror would probably place on the error; and
6. whether declaring the error harmless would encourage the State to repeat it with impunity.

*Id.* at 587.

Factors two through five are inquiries logically relevant to determining harmless error. Factor one, the source of the error, comes into play when the source is the appellant in determining whether the error was invited. Thus, it belongs in a waiver, rather than a harmless error, inquiry. Because most error determinations are directed at evaluating a trial court's action or inaction, factor six is usually misdirected by focusing on the conduct of the prosecutor. Even when the error is the result of prosecutorial misconduct, however, factor six still makes no sense in determining whether the defendant was actually harmed in a particular case. It appears to be an attempt to exercise a non-existent supervisory responsibility over prosecuting attorneys.

Why should there be different analytical constructs to guide harmless error in general, and harmless error in the jury charge? In *Almanza v. State*, the Court of Criminal Appeals set out a harmless error analysis including review of the: (1) entire jury charge; (2) state of the evidence, including the contested issues and weight of probative evidence; (3) argument of counsel; and (4) any other relevant information. 686 S.W.2d 157, 171 (Tex.Crim.App.1984).

Isn't it time to consolidate a list of factors useful to harmless error analysis, regardless of the type of error?