*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


# MEMORANDUM OPINION

Nos. 04-08-00512-CR, 04-08-00513-CR, and 04-08-00514-CR

John Anthony **POORE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2007-CR-0939, 2007-CR-0940, and 2007-CR-0941
Honorable Mary Román, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Catherine Stone, Chief Justice
    Karen Angelini, Justice
    Rebecca Simmons, Justice

Delivered and Filed:  May 13, 2009

AFFIRMED

Appellant John Anthony Poore was convicted by a jury of evading detention with a vehicle, theft under $1,500, and aggravated robbery of a person sixty-five years of age or older. On appeal, Poore argues that the trial court erred in denying his motion to suppress after he invoked his Fifth Amendment right against self-incrimination by requesting counsel.

**FACTUAL BACKGROUND**

Because our analysis requires an evaluation of the evidence, the pertinent facts are detailed below. On July 31, 2006, as eighty-year old Ruby Gilmore left the H.E.B. grocery store, she was approached by Appellant John Anthony Poore offering to fix her flat tire. After Ms. Gilmore refused his assistance, Poore opened the driver's side door and tried to push Ms. Gilmore into the passenger side of the vehicle. A struggle ensued, during which Ms. Gilmore suffered a severe cut on her hand, and bruises to her arm, and Poore forcibly ejected her from her vehicle. Poore was, however, able to wrestle away Ms. Gilmore's keys during the altercation and eventually abscond in her vehicle.

Four days later, Detective Edward Lopez of the San Antonio Police Department Repeat Offenders Unit observed a vehicle driven by Poore pull into a commercial parking lot. Lopez watched Poore exit the vehicle and take clothing from the outside rack of a clothing store. Officer Carlos Salazar also observed Poore take the clothing and Salazar tried to stop the vehicle as Poore drove away. Although Poore attempted to evade arrest, he eventually drove the vehicle into a telephone pole. After a brief chase on foot, Salazar and Lopez apprehended Poore. The vehicle, a Nissan Sentra, was identified as belonging to Ms. Gilmore, and the officers subsequently recovered her checkbook and credit cards inside the vehicle.

Following his arrest, Poore made a statement to Detective Timothy J. Quinn. Before taking the statement, Quinn read Poore his *Miranda* rights, and Poore voluntarily waived those rights. During the interrogation, the following exchange occurred between Poore and Quinn.

Quinn: You asked Ms. Gilmore, you told her she had a flat tire. And ask[ed] her if you could change it for her?
Poore: Oh.
Quinn: Then when she said no, you tried to force your way into the car and told her to scoot over. Do you remember that?

Poore:   (inaudible) I was so far gone, I'm out there, I didn't shop.  I gotta go get my sister that's an attorneys here running judge (sic) and . . .

Quinn:   But I don't want to talk about attorneys and judges right now. I want to talk to you about this, this older lady that was just getting her groceries at HEB, whose, whose, the grocery store is just a couple of blocks from where you used to live, right?

Poore:   Yeah.

Poore's trial counsel filed a motion to suppress, arguing that Poore's statement requesting counsel invoked his Fifth Amendment right against self-incrimination.  The trial court examined a transcript of Poore's interrogation, concluded that Poore did not invoke his constitutional right, and denied the motion.  At trial, the State played a redacted version of the interrogation video to the jury.

The jury found Poore guilty on the evading arrest, theft, and aggravated robbery charges. Based on Poore's plea of true to the enhancement allegations, he was sentenced as a habitual offender, and the jury assessed punishment at twenty years confinement in the Institutional Division of the Texas Department of Criminal Justice on the evading arrest and theft and eighty years confinement on the aggravated robbery conviction.

**VIOLATION OF FEDERAL AND STATE RIGHTS**

**A.  Fifth Amendment Right**

Poore argues that his right against compulsory self-incrimination, protected by the Fifth Amendment, required the police to stop the interrogation when he indicated his desire to consult with an attorney.[1]

**B.  Standard of Review**

We review the trial court's admission of evidence by an abuse of discretion standard. *State v. Oliver*, 29 S.W.3d 190, 191 (Tex. App.—San Antonio 2000, pet. ref'd) (citing

---

[1] We note that Poore's counsel objected to the evidence based on both the United States and Texas Constitutions, but did not reference Texas Code of Criminal Procedure article 38.23 in connection with Poore's right to terminate the interview.

*Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990)). We afford "almost total deference to a trial court's determination of the historical facts that the record supports" particularly when the determination is based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). At the hearing on a motion to suppress, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Wood v. State*, 18 S.W.3d 642, 646 (Tex. Crim. App. 2000); *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). "The appellate courts . . . should afford the same amount of deference to trial courts' rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Guzman*, 955 S.W.2d at 89 (quoting *Villarreal v. State*, 935 S.W.2d 134, 139 (Tex. Crim. App. 1996) (McCormick, P.J., concurring)).

## C. Right to Terminate Questioning

Poore contends that he invoked his Fifth Amendment right against self-incrimination by asking for counsel when he stated: "I gotta go get my sister that's an attorneys here running judge (sic) . . . ."[2] The right to terminate questioning is among the procedural safeguards that *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), establishes. This right requires the police to cease custodial interrogation when a suspect "states that he wants an attorney." *Id*. at 474; *accord Dinkins v. State*, 894 S.W.2d 330, 350 (Tex. Crim. App. 1995). "Once an accused has invoked his right to counsel, all interrogation by the police must stop until counsel is provided or until the accused initiates contact with the police." *Reed v. State*, 227 S.W.3d 111, 116 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citing *Dinkins*, 894 S.W.2d at 350). An officer "need not stop his questioning unless the suspect's invocation of rights is unambiguous." *Ramos*

---

[2] It is undisputed that Mr. Poore was given his warnings at the start of the interrogation, and this waiver was memorialized on an audiovisual recording.

*v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008). In determining whether the right to remain silent was unambiguously invoked, we look to the totality of the circumstances. *Watson v. State*, 762 S.W.2d 591, 597 (Tex. Crim. App. 1988).

During the recorded interview, Detective Quinn read appellant his *Miranda* warnings and informed him of his right to an attorney. When questioning Poore about the robbery/carjacking at the H.E.B., Poore told the detective his sister lived in that area. The detectives encouraged Poore to try to remember what happened the day of the incident and whether he had observed Ms. Gilmore put groceries in her car or spoke to her. It is at this point that Poore makes the statement: "I gotta go get my sister that's an attorneys here running judge (sic) . . . ." The detective tries to redirect Poore back to the day of the incident and Poore then continues that he was in the area of the H.E.B. to see his sister. Poore later claims his sister is an attorney, but explains that they are not close.

Following argument of counsel, the trial court stated: "As far as this transcript is concerned, he is not invoking his right to an attorney at this point." The record supports the trial court's finding that Poore did not request counsel and therefore, we hold the trial court did not abuse his discretion in admitting the video recording before the jury.

### HARM ANALYSIS

Even if we assumed that Poore invoked his Fifth Amendment right when he stated, "I gotta go get my sister that's an attorneys here running judge (sic)," our analysis would not end— we would need to determine whether the court's decision to admit the redacted version of the interrogation video at trial constituted harmful error under Texas Rule of Appellate Procedure 44.2(a).

## A. Standard of Review

"If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction . . . unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction . . . ." TEX. R. APP. P. 44.2(a). "[A] federal constitutional error [does] not contribute to the verdict obtained if the verdict would have been the same absent the error." *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007) (internal quotation marks omitted).

## B. Harmful Error Analysis

A harm analysis concerning the improper admission of evidence focuses on the effect of the erroneously admitted evidence on the jury's verdict. *See Long v. State*, 203 S.W.3d 352, 353 (Tex. Crim. App. 2006) (discussing how the appellate court should conduct a proper harm analysis). In determining the likelihood that, absent the improper admission of the evidence, the jury's verdict would have been the same, we must consider the entire record. *Clay*, 240 S.W.3d at 904. In conducting this analysis, "'[w]e consider the source and nature of the error, the extent that it was emphasized by the State, its probable collateral implications, the weight a juror would probably place on the error, and whether declaring it harmless would likely encourage the State to repeat it with impunity.'" *Acevedo v. State*, 255 S.W.3d 162, 173 (Tex. App.—San Antonio 2008, pet. ref'd) (quoting *Wimbrey v. State*, 106 S.W.3d 190, 193 (Tex. App.—Fort Worth 2003, pet. ref'd)); *accord Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989) (en banc). We further review the record in a neutral manner focusing on the effect of the error and the possible prejudice on the jurors' decision-making ability. *Harris*, 790 S.W.2d at 588–89.

In this case, the source of the error was the trial court's decision to admit the remainder of Poore's statement into evidence, after he invoked his Fifth Amendment right against self-

incrimination by requesting counsel. *See Cooper v. State*, 961 S.W.2d 222, 227 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (deciding that admitting that portion of the appellant's testimony made after he invoked his right to terminate led to the appellant's conviction and was harmful error). The video testimony emphasized Poore's appearance and demeanor during the interview, as well as his responses to Quinn's questions. *See id.* The general impression left with the jury was that Poore was guilty because he admitted that he found himself in possession of a car he did not own. *See id.* Further, in response to one of Detective Quinn's questions, Poore stated, "I know I'm caught." The video also provided an opportunity for the jury to see Poore wearing the same red shirt during the interrogation that he wore in the H.E.B. surveillance video and explain that he was in the H.E.B. area to see his sister who is an attorney.

Our analysis must also include an "evaluat[ion of] the entire record in a neutral, impartial, and even-handed manner." *Hargrove v. State*, 162 S.W.3d 313, 323 (Tex. App.—Fort Worth 2005, pet. ref'd). In addition to the video recording, there was additional evidence connecting Poore to the offenses. At trial, Ms. Gilmore identified Poore in a photographic lineup as the man who assaulted her and took her vehicle from the H.E.B. parking lot. Robert Tennyson, an eyewitness to the car-jacking, identified Poore as the individual who knocked Ms. Gilmore to the ground, took her keys, and drove off in her vehicle. The jury also saw a photo of Ms. Gilmore's injuries from the assault, along with an H.E.B. surveillance video of the entire incident.

Both Officer Salazar and Janie Alcorta, the assistant manager of the clothing store, testified that Poore took clothing off the store's racks without paying and placed them inside a white vehicle. Officer Salazar also testified that when he attempted to stop Poore after the clothing incident, Poore began to increase his speed and eventually wrecked Ms. Gilmore's

vehicle. After Poore's arrest, two of Ms. Gilmore's credit cards, her checkbook, and two checks with Ms. Gilmore's forged signature were discovered inside the vehicle.[3]

In light of the other evidence of Poore's guilt, we are convinced that a juror would place little, if any, weight on any statements made after Poore allegedly invoked his Fifth Amendment right against self-incrimination. *See Dowthitt v. State*, 931 S.W.2d 244, 257, 263 (Tex. Crim. App. 1996) (deciding that the defendant's statement allegedly invoking his right to remain silent was ambiguous and that admitting his subsequent statements, considering the entire record, did not harm the defendant). The State did not emphasize the video interview during its closing argument, and defense counsel dismissed the video during closing argument, asserting that the video "doesn't clear up anything about Mr. Poore's events of that evening." We agree. We conclude that even if the video was erroneously admitted, it was harmless error. Poore's first and second issues on appeal are overruled.

## CONCLUSION

After viewing the record in a neutral light, we conclude, beyond a reasonable doubt, that the error did not prejudice the jurors' evaluation process and did not contribute to Poore's conviction. *See* TEX. R. APP. P. 42.2(a). The judgments of the trial court are affirmed.

Rebecca Simmons, Justice

Do not publish

---

[3] One check was made payable to "Arnulfo Cardenas," while the other was made payable to "Handy Andy." Ms. Gilmore denied writing either of these checks; she testified they were blank and in her purse when Poore took her vehicle from the H.E.B. parking lot.