



# MEMORANDUM OPINION

No. 04-10-00025-CR

Dario Ramiro **ACEVEDO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kendall County, Texas
Trial Court No. 4418
Honorable N. Keith Williams, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  March 23, 2011

AFFIRMED

Dario Ramiro Acevedo was convicted of murdering Jefferey Donofrio and was sentenced to life in prison.  Acevedo appeals the judgment, complaining the evidence is legally insufficient to support the verdict, the trial court erred in allowing a witness to testify and in admitting certain evidence, and the court had an improper ex parte communication with a witness.

## SUFFICIENCY OF THE EVIDENCE

Acevedo argues the evidence is legally insufficient to support the jury's verdict that he intentionally and knowingly caused the death of Jefferey Donofrio by shooting him with a firearm. In conducting a legal sufficiency review, we look at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 730-31 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005). We resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). We defer to the jury's determination of the weight to be given to contradictory testimonial evidence because resolution of the conflict is often determined by the jurors' evaluation of the witnesses' credibility and demeanor. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id*. The standard of review is the same for cases relying on either direct or circumstantial evidence. *Id*.

James Mason testified that on March 19, 2005, he went to Cascade Caverns in Kendall County, Texas. The property had fallen into disrepair, and Mason was helping his friend James Kyle make repairs and get the property operational. Acevedo and Donofrio were also present helping with the repairs. Mason testified the four men went to repair electrical wiring that led to an old trailer. Mason had determined electrical current was flowing to the trailer because a light inside the trailer worked. They wanted to cut off the power to the trailer before attempting any

repairs. Donofrio wanted to use an ohmmeter on an electrical junction box next to the back of the trailer, but Mason told him not to because he feared Donofrio would receive an electrical shock. Instead, Mason would go into the trailer and turn on the light switch. Kyle was to walk to a group of electrical switches that were about 250 feet away. They asked Acevedo to stand about halfway between Mason and Kyle and relay information about when Kyle flipped one of the switches and whether the light in the trailer remained on. As Mason walked around the trailer to go in the front door, he saw Donofrio kneeling down by the electrical box next to the trailer and Acevedo standing approximately six feet from Donofrio. Mason testified that after he turned on the light inside the trailer, he heard a loud "pop." He told the jury he thought Donofrio had put the leads from the ohmmeter into the junction box and caused an electrical short.

Mason testified he walked around to the back of the trailer, where he saw Donofrio walking and holding his hand over his heart. Donofrio told Mason to call 911, then took a few more steps and fell down. Mason went to help Donofrio and rolled Donofrio onto his back. Donofrio said "hurry," but nothing further. Thinking that Donofrio's injuries resulted from an electrical shock, Mason used his cell phone to call 911. When 911 requested an address, Mason handed the phone to Acevedo and asked him to talk to the operator. Mason testified Acevedo took the phone and closed it, terminating the connection, and walked away. Mason testified he reestablished a connection with 911, gave the address, and told Acevedo to go open the front gate on the property. According to Mason, Acevedo did not appear in a big hurry to open the gate and was walking "nonchalantly." When Acevedo returned, he told the group that he "didn't mean it" and "it was an accident." Mason testified it was at this time he realized Acevedo had a gun and they told Acevedo to "get rid of the gun." Mason testified Acevedo reached inside the

right pocket of his vest, removed a handgun, and tossed it a few feet away. Mason told the jury that Acevedo had told him earlier in the day that he liked guns and "was good with" them.

Kelly Beardsley testified that her sister had owned Cascade Caverns jointly with Kyle. Her sister died in early March 2005, and Beardsley testified she went to the property to help Kyle straighten out the business. Just before the shooting, Beardsley saw the group of men inspecting the wiring near the trailer. She heard a "pop" and ran out to see what had occurred. She saw Donofrio laying on the ground with Kyle kneeling over him. Mason was standing nearby using the telephone to call 911, and Acevedo was standing a few feet away. Beardsley heard Kyle ask Acevedo to open the front gate. She testified Acevedo was "shuffling" toward the gate and she thought he should have been moving faster. She also testified Acevedo was "fidgeting around a lot" as if he were trying to hide something. When Acevedo returned, he told the group, "I didn't mean to shoot him. It was an accident." Kyle asked Acevedo if he had a gun, and Acevedo responded, "Yeah, but I didn't mean to do it. . . . I was just messing around with it."

Kathy Rider testified she was a Kendall County deputy sheriff on March 19, 2005, when she responded to a call at Cascade Caverns. When she arrived, she saw two men standing over a man who was lying on the ground, and saw a fourth man sitting a few feet away. She learned Acevedo was the man sitting on the ground. She testified Acevedo was sitting on his hands and looked as if he were going to faint or vomit. Rider spoke with Mason, retrieved the handgun, and placed Acevedo in a patrol car. She testified the handgun had four live rounds and one spent round when she took possession of it. Ron Crumley, a firearm and toolmark examiner with the Texas Department of Public Safety crime lab, testified he examined and performed several tests on the weapon, which he described as a .38 special caliber Smith & Wesson revolver, Model 40. Crumley first determined the weapon was functioning properly and had not been damaged.

Crumley testified he then sought to determine whether the gun would discharge if it were jarred or dropped. To simulate dropping the weapon to the ground, Crumley used a rubber mallet to strike the gun at various places, including the hammer, while the weapon was loaded with primed cartridge cases.[1] He used a microscope to inspect the surface of the primer and determined that the hammer did not strike the primer during the tests. Crumley also tested the weapon to determine how much force was required to pull the trigger and cause the gun to fire. He told the jury that a person would need to pull the trigger with at least eleven and three-quarters pounds of force to fire the weapon. Crumley explained that the weapon was also equipped with a grip safety on the back of the grip. According to Crumley, the weapon would not fire unless the grip safety was depressed while pulling on the trigger with at least eleven and three-quarters pounds of force. Crumley testified that he could not envision a scenario where the weapon would fire if dropped because firing the weapon requires pressure in two different directions — the backward pull on the trigger coupled with a forward pushing on the grip safety.

Finally, the State presented evidence that gunshot primer residue tests conducted on Acevedo's hands failed to disclose any evidence that Acevedo fired a weapon. However, the State's expert also testified that gunshot primer residue could be removed from hands by rubbing them together or by rubbing them against clothing. Tests performed on the victim's clothing also failed to reveal any gunshot pattern residue, indicating the weapon was probably more than four feet from the victim when the shot was fired. Dr. Kimberly Molina, a Bexar County Deputy Medical Examiner, testified that Donofrio died from a single gunshot wound that entered his back and exited his chest. The path of the bullet was slightly upward. The spent slug was not recovered.

---

[1] Crumley described the primed cartridge cases as cartridges without powder or bullets.

Acevedo contends the evidence is legally insufficient because the State failed to prove the shooting was anything other than an accident. We disagree. Although there is no direct evidence of how the shooting occurred, Acevedo made statements admitting he shot the victim. The jury was free to disregard Acevedo's assertion it was an accident in light of the firearm expert's opinion that the gun would not have discharged as a result of being jarred or dropped and his testimony that a person would have to apply pressure in two different directions to operate the weapon. The jury reasonably could have inferred the shooting was intentional from the evidence that Acevedo put the gun away inside his vest after the "accident," the testimony that he terminated the 911 call when the operator was asking for the address, and from the evidence that Acevedo lacked any sense of urgency when he went to open the gate for emergency responders. Viewing the evidence in the light most favorable to the jury's verdict, a rational jury could have found all the elements of the offense beyond a reasonable doubt.

## TESTIMONY OF ERNIE LOBELLO

Acevedo argues the trial court erred when it allowed Ernie Lobello, an investigator with the district attorney's office, to testify in violation of Rule 614 of the Texas Rules of Evidence and the trial court's standing discovery order.

During the cross-examination of Dr. Molina, Acevedo placed into evidence a photograph of Lobello pointing to a spot on a tree. Acevedo questioned Dr. Molina extensively about the path the bullet traveled through the victim's body and the various possible positions of the victim's torso when shot. Acevedo sought to establish that the slightly upward path the bullet travelled through the victim's body, coupled with a bullet strike high on a tree, would indicate the weapon was fired when it was near or on the ground. If shown, this would support Acevedo's contention the shooting was an accident, possibly resulting from a dropped weapon.

Dr. Molina was the last witness to testify before the court recessed for lunch. After the break, the State called Lobello to testify about the picture. Acevedo objected on the grounds that Lobello had been present during Dr. Molina's testimony and Lobello had not been included on the State's witness list.

During a hearing held outside the presence of the jury, Lobello testified he had been in the courtroom listening to the testimony, but that the prosecutor had told him to leave the courtroom about the time Acevedo began to question Dr. Molina about the photograph. Lobello stated he did not hear the testimony. Lobello testified that during the lunch break the prosecutor asked him if he was pointing to a bullet hole in the tree, and he told her it was not a bullet hole. Lobello testified he made a similar comment to the trial judge during the break. Lobello told the court the prosecutor did not discuss Dr. Molina's testimony with him and had never told him he would be a witness at the trial. Finally, Lobello testified he did not recognize any member of the jury.

The prosecutor told the trial court she had never intended to call Lobello as a witness and stipulated his name did not appear on the witness list. She stated she had not seen the photograph previously and proposed to limit Lobello's testimony to the fact the defect in the tree was not a bullet hole. The court overruled Acevedo's objections. After ascertaining that none of the jurors was familiar with or knew Lobello, the trial court allowed him to testify.

Lobello testified that he was working as a deputy sheriff for Kendall County when the picture was taken. He testified the picture was taken several days after the shooting when the Kendall County Sheriff's Office executed a search warrant on the property. Lobello testified he was looking for a bullet, but that he did not find any evidence that a bullet struck the tree in the

photograph. He told the jury he was pointing to a "defect" in the tree, but that it was not a bullet hole.

*Violation of Rule 614*

At the beginning of the trial, the court ordered the witnesses excluded from the courtroom pursuant to rule 614 of the Texas Rules of Evidence. That rule permits the trial court to exclude witnesses from the courtroom in order to prevent them from hearing the testimony of other witnesses. *See* TEX. R. EVID. 614. The trial court has considerable discretion in deciding how to proceed when the rule is violated. *See Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996)(holding decision to allow witness testimony when rule violated reviewed for abuse of discretion), *cert. denied*, 522 U.S. 827 (1997); *Leache v. State*, 22 Tex. Ct. App. 279, 3 S.W. 539, 541 (1886)(holding that "where 'the rule' is invoked as to witnesses, the mode and manner of its enforcement is confided largely to the discretion of the court, and the exercise of that discretion will not be revised except in the clearest cases of abuse"). In deciding whether the trial court abused its discretion, the reviewing court should determine if the witness's presence during the other testimony prejudiced the defendant. *Bell*, 938 S.W.2d at 50. Factors to consider include whether the testifying witness actually heard the testimony of the other witness and whether the testifying witness's testimony "contradicted the testimony of a witness from the opposing side or corroborated testimony of a witness he had conferred with or heard." *Id.*

Lobello testified he did not hear Dr. Molina's testimony about the photograph. Moreover, no witness, other than Lobello, testified about the defect in the tree, and thus Lobello's testimony did not directly contradict or corroborate any other witness's testimony. We cannot say the trial court abused its discretion in allowing Lobello to testify.

*Violation of Discovery Order*

Acevedo also contends the trial court should not have allowed Lobello to testify because the State violated the court's discovery order by not including Lobello on its witness list. We review the trial court's decision to permit the witness to testify for abuse of discretion. *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992). Factors we consider include whether the prosecutor acted in bad faith and whether the defendant reasonably could have anticipated the witness's testimony. *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993), *cert. denied*, 512 U.S. 1246 (1994).

Once again, we cannot conclude the trial court abused its discretion. The prosecutor stated she had not intended to call Lobello as a witness.[2] She represented to the court that she had not seen the photograph before the defense introduced it into evidence, and when that happened, she realized Lobello's testimony might be needed and instructed him to leave the courtroom. Although Acevedo told the court the photograph was obtained from the district attorney's file, he did not expressly dispute the prosecutor's statements. Acevedo argues the prosecutor's conduct amounted to negligence, but does not argue the conduct amounts to bad faith. Nor does the record reflect the prosecutor acted in bad faith in failing to include Lobello on its witness list. Moreover, Acevedo reasonably could have anticipated the State would seek to call Lobello as a witness once the defense implied that the photograph showed Lobello pointing to a bullet hole in the tree. Acevedo's point of error regarding violation of the discovery order is overruled.[3]

---

[2] This was the second time this case has been tried. Lobello was not called as a witness in the first trial.

[3] Acevedo also complains the State failed to establish a proper predicate for Lobello's opinion that the defect on the tree was not caused by a bullet. However, Acevedo did not object to the testimony on this ground at trial, and therefore failed to preserve any error on this point. *See* TEX. R. APP. P. 33.1.

**EX PARTE COMMUNICATION**

Acevedo complains of an improper ex parte communication between Lobello and the trial court when Lobello commented to the judge during the lunch break that the defect in the tree was not a bullet hole. The entire record regarding the communication is as follows:

> Q. [by Defense] Since that testimony [referring to Dr. Molina's testimony], have you had a chance to look at that picture and review it with anybody else?
>
> A. [Lobello] On the break for lunch, I spoke to [the prosecutor] about it.
>
> Q. And did you speak with [the judge] about it also?
>
> A. I made a comment to him.
>
> Q. And what was your comment to the judge about?
>
> A. I – and I can't remember verbatim, but I think something to the effect that it wasn't a bullet. There wasn't any bullet hole.

The record does not contain the trial court's response, if any, to Lobello's ex parte comment. Acevedo argues that "due to the unprofessional behavior of the trial court, he was forever denied his right to a fair and impartial trial," and suggests the ex parte communication influenced the trial court's decision to permit Lobello to testify.

Nothing in the record supports the assertion that Lobello's comment to the judge influenced the court's decision to allow Lobello to testify. And, as discussed above, the trial court did not abuse its discretion in allowing the testimony. Acevedo cites *Abdygapparova v. State*, 243 S.W.3d 191 (Tex. App. – San Antonio 2007, pet. ref'd), to support his contention that he was denied his right to a fair and impartial trial. However, *Abdygapparova* offers him little support. In *Abdygapparova*, the trial court engaged in ex parte communications by exchanging numerous notes with the prosecutor during voir dire, some concerning the conduct of the voir dire and a procedural issue on which the trial court had ruled. 243 S.W.3d at 206-07. This court

held that the notes, coupled with some of the trial court's rulings, indicated the court abandoned its role as an impartial judge, which "infected the integrity of the trial process." *Id*. at 210. A single instance of a witness making an unfortunate ex parte comment to the trial judge, where the record does not reflect whether the trial court admonished or chastised the witness, in no way suggests the court abandoned its role as an impartial judge. We overrule the point of error.

### ADMISSIBILITY OF PHOTOGRAPH

Acevedo next complains the trial court erred in admitting a photograph that showed Donofrio on the ground at the crime scene. Acevedo objected to admission of the photograph on the ground that its "inflammatory nature" outweighed its probative value and because it showed the victim after emergency personnel had administered medical aid. *See* TEX. R. EVID. 403 (relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice).

We review the trial court's decision to admit a photograph for abuse of discretion. *Prible*, 175 S.W.3d at 734. In determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice, the court may consider a variety of factors, including: "the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case." *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009), *cert. denied*, 130 S. Ct. 3411 (2010). Even autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy. *Id.* A photograph is also "generally admissible if verbal testimony about the matters depicted in the photograph is also admissible." *Paredes v. State*, 129 S.W.3d 530, 539 (Tex. Crim. App. 2004). The color photograph admitted

in this case shows Donofrio in the lower left part of the photograph. It is not a close-up of the victim, and if any medical procedures had been performed on the body, they are not readily visible in the photograph. Some blood is visible on the victim's clothing and his chest is bared. However, most of the photograph shows the trailer, the area around the trailer, and the electrical box that was the center of the victim's attention before his death. We cannot conclude the trial court abused its discretion in admitting the photograph into evidence. The photograph is not gruesome, does not show a close-up of any injury, and merely depicts the victim in relation to his surroundings. The probative value of the photograph was not substantially outweighed by any prejudicial effect.

### REQUEST FOR ATTORNEY

Lastly, Acevedo argues the trial court erred by allowing Kelly Beardsley to testify, over his objection, that Acevedo asked Kyle to hire him an attorney. Beardsley testified that after Acevedo admitted shooting Donofrio and while they were waiting for emergency responders to arrive, Acevedo asked Kyle, "Could you please hire me an attorney?" Beardsley testified she said to Acevedo, "You want an attorney and Jeff's here on his last breath?" Beardsley testified Acevedo did not respond, and no further evidence was presented on this issue.

Acevedo argues Beardsley's testimony violated his rights under the Fifth and Sixth Amendments to the United States Constitution. Acevedo argues that "an assertion of an attorney raises an implication of guilt," citing *Cooper v. State*, 961 S.W.2d 222, 227 (Tex. App.— Houston [1st Dist.] 1997, pet. ref'd), and *Rezac v. State*, 722 S.W.2d 32, 33 (Tex. App.—Dallas 1986), *rev'd on other grounds*, 782 S.W.2d 869 (Tex. Crim. App. 1990). However, in both *Cooper* and *Rezac*, the defendant invoked his constitutional rights during custodial interrogation. The right to counsel under the Fifth Amendment is limited to custodial interrogation. *Griffith v.*

*State*, 55 S.W.3d 598, 603 (Tex. Crim. App. 2001). "[T]here is no Fifth Amendment right to counsel if there is no interrogation." *Id.* The right to counsel under the Sixth Amendment does not attach until adversary judicial proceedings have been initiated. *Id.* (*quoting Kirby v. Illinois*, 406 U.S. 682 (1972)). As there had been no arrest or custodial interrogation, and no adversary judicial proceedings had been initiated when Acevedo made his request, his constitutional rights were not violated by admission of the evidence, and we overrule the point of error.

The judgment of the trial court is affirmed.

Steven C. Hilbig, Justice

Do Not Publish