

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00701-CR

Matthew **JOINER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2014CR10594
Honorable Jefferson Moore, Judge Presiding

Opinion by:   Patricia O. Alvarez, Justice

Sitting:       Marialyn Barnard, Justice
               Patricia O. Alvarez, Justice
               Irene Rios, Justice

Delivered and Filed:  August 15, 2018

AFFIRMED

On September 21, 2016, a Bexar County jury returned guilty verdicts for aggravated assault

with a deadly weapon and aggravated assault causing serious bodily injury against Appellant

Matthew Joiner.  The trial court subsequently assessed punishment at eighteen years' confinement

in the Institutional Division of the Texas Department of Criminal Justice and a $1,500.00 fine on

each charge.  Joiner raises several issues on appeal: (1) the evidence is insufficient to support the

jury's verdicts; (2) the trial court erred in admitting the photographs of M.V.'s[1] face because the

---

[1] For purposes of this opinion, we use the pseudonym M.V. to represent the victim in this matter.

photographs included makeup on M.V.'s face which made the danger of confusion and misleading the jury substantially outweigh any probative value; (3) the trial court erred in admitting a video recording of San Antonio Police Detective Sergio Flores walking into the interview room and Joiner not responding; and (4) the trial court erred in overruling defense counsel's objection to the State's closing argument. We affirm the trial court's judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

San Antonio Police Department Officer Oliver Flaig testified he was dispatched for a welfare check on August 8, 2014, based on a call placed by M.V.'s son. Joiner met Officer Flaig outside the residence and escorted him through the garage. As he walked through the house, Officer Flaig noticed "[s]everal knives and scissors were placed around the house on counter tops and cabinets, and there was a baseball bat by the door."

Officer Flaig located M.V. in her daughter's room. The officer noted severe bruising on M.V.'s right cheek and black circles around her eyes—"[the bruises] were like golf-ball shape. They were perfect circles." He spoke to M.V. while his partner stayed with Joiner. M.V. told Officer Flaig that she fell down the stairs. The officer testified, "I pretty much told her that I didn't believe her." Because he did not have a complainant, Officer Flaig left the residence and notified his supervisor regarding his concern for M.V.

Officer Misty Hodge, with San Antonio Police Department's Crisis Response Team, testified that on August 11, 2014, Officer Flaig approached her about his continued concern regarding M.V. Officer Hodge testified that she called M.V., but M.V. was very short, and very distant on the phone. When Officer Flaig asked her about it again the next day, Officer Hodge decided to try and talk to M.V. at her place of work. Officer Hodge testified that as soon as she saw M.V., the redness in her eyes, specifically the petechia or discoloration that results when blood vessels burst and seep through the skin, the officer immediately knew that M.V. had been

strangled.  The officer relayed that it took a couple of hours before M.V. told her everything that had transpired.

M.V. testified she started dating Joiner in 2014; and within a few weeks, he moved into her home in San Antonio.  M.V.'s teenage daughter and her younger daughter, who requires 24/7 nursing care, also lived at the house.  M.V. testified the first time Joiner showed anger towards her was the beginning of June.  On another occasion, they were at a family event when Joiner drank too much and M.V.'s family asked her to take Joiner away from the children.  M.V. and Joiner went to Joiner's apartment and Joiner became violent and started hitting her on the cheek with his palm.  The next morning, Joiner was very apologetic and M.V. genuinely believed he was sorry.  M.V. convinced herself that it was simply a case of too much alcohol.

M.V. testified that on August 4, 2014, she, Joiner, and her youngest daughter were the only ones at her residence.  Her teenage daughter was at summer camp with their church.  M.V. had just finished feeding her daughter, taken a shower, and climbed into bed when Joiner "turn[ed] around and just smacked me."  M.V. testified that Joiner continued to hit her, knock her down, and when she tried to get up, he would start again.  When the alarm on the equipment in M.V.'s daughter's room went off, M.V. pleaded with Joiner to let her check on her daughter.  Joiner followed M.V. into her daughter's room; as she was walking back into the living room, she saw her cell phone and they reached for it at the same time.  "And he reached to grab for my cell phone and he pushed me back and I hit my hand on the bar."  Joiner hit M.V.'s hand on the bar with so much force it dislocated two of her fingers, immediately turning them to face the wrong direction.  M.V. testified that Joiner kept kicking her telling her to get up.  Joiner took her to the kitchen and tried to make a splint out of straws because it was so obvious that her fingers were out of place from hitting her hand on the bar.

M.V. testified that as soon as Joiner finished taping her fingers, he saw something that irritated him. Joiner threw M.V. on the ground, grabbed a serrated knife and stuck it down her throat. Joiner told her that "he ought to hit the end of the—the serrated knife and kill me right there." M.V.'s lip was bleeding and her tooth was chipped during the attack. About 3:30 a.m., M.V. remembers laying down in bed and Joiner choking her and telling her that he was going to kill her. M.V. further testified that Joiner strategically placed knives and scissors throughout her house. At "every entrance to my house there was, you know, some type of weapon in case you needed it."

M.V. testified that she did not return to work for a week because Joiner told her that no one could see her like that. She had "[a] big swollen, bloody face. [Her] eyes were pretty much swollen shut. They were all black and purple. [One] whole side of my face was bruised all the way down." M.V. authenticated pictures taken by police officers, but testified the pictures were taken a week after the assault. M.V. further testified that she did not tell Officer Flaig the truth because she was scared of Joiner.

Dr. Nancy Otto, a hand surgeon, testified that M.V. suffered a break of the knuckle on her ring finger that required a plate and screws to raise the joint surface back to the correct level. The little finger was broken in multiple places and shortened. Dr. Otto testified that she pulled the finger out to lengthen it and was able to put some pins through the skin to hold it back out in place. After two surgeries, M.V. gained a significant amount of motion back, but it is not normal. Dr. Otto opined that M.V. suffered "serious injuries to the two bones on both fingers, the fourth and first fingers, and serious enough to require surgery because they were crooked. And they are now straight but they're still stiff." Dr. Otto further testified M.V.'s injuries will affect her strength and ability to hold things with her fingers for the rest of her life.

We turn first to Joiner's contention the evidence is legally insufficient to support the jury's verdict.

## SUFFICIENCY OF THE EVIDENCE

**A.      Standard of Review**

In reviewing the sufficiency of the evidence, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011); *accord Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). "This standard recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence. . . ." *Adames*, 353 S.W.3d at 860; *accord Gear*, 340 S.W.3d at 746. The reviewing court must also give deference to the jury's ability "to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id*. (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We defer to the jury's responsibility to fairly resolve any conflicts in the evidence, weigh the evidence, and draw reasonable inferences. *See Hooper*, 214 S.W.3d at 13. The jury alone decides whether to believe eyewitness testimony, and it resolves any conflicts in the evidence. *See Hooper*, 214 S.W.3d at 13; *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). In conducting a sufficiency review, "[w]e do not engage in a second evaluation of the

weight and credibility of the evidence, but only ensure that the jury reached a rational decision." *Young*, 358 S.W.3d at 801.

**B.     Arguments of the Parties**

Joiner contends M.V.'s testimony that he forced a bread knife down her throat and held it there for several minutes and caused only a cut lip and a chipped tooth "is so preposterous as to be unbelievable," and no reasonable jury could have found the evidence that Joiner assaulted M.V. with a deadly weapon, credible beyond a reasonable doubt.

The State counters that Joiner forced M.V. to hold her mouth open while he inserted the knife and then threatened to kill her with the knife, a deadly weapon.  The State also points to the evidence that Joiner broke M.V.'s fingers during the assault.  M.V. and Dr. Nancy Otto testified M.V. lost full use of her fingers and hand.  The evidence is therefore sufficient to support the jury's verdict that Joiner committed aggravated assault causing serious bodily injury.

**C.     Aggravated Assault**

Texas Penal Code section 22.02(a) provides that a person commits aggravated assault if the person commits assault and:

(1)     causes serious bodily injury to another, including the person's spouse; or
(2)     uses or exhibits a deadly weapon during the commission of the assault.

TEX. PENAL CODE ANN. § 22.02(a) (West 2011).  A "deadly weapon" is defined in relevant part as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."  *Id*. § 1.07(a)(17)(B) (West Supp. 2018); *see Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003) (requiring evidence that (1) the deadly weapon meets the statutory definition; (2) the defendant used or exhibited the deadly weapon while committing the crime for which he was convicted; and (3) other people were actually endangered); *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (observing that the placement of the word "capable" in [section

1.07(a)(17)(B) ] enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force"). A knife can be a deadly weapon if the evidence shows that its use or intended use renders it capable of causing death or serious bodily injury. *See McCain*, 22 S.W.3d at 503.

"Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46). The distinction between "bodily injury" and "serious bodily injury" must be made on a case-by-case basis. *Hernandez v. State*, 946 S.W.2d 108, 111 (Tex. App.—El Paso 1997, no pet.). Medical testimony is sufficient proof upon which a jury can rely to find a victim's injuries constitute serious bodily injury. *See* TEX. PENAL CODE ANN. § 1.07(a)(46).

**D.      Analysis**

*1.      Deadly Weapon*

Joiner contends M.V.'s testimony regarding the serrated knife is not credible and the jury could not have reasonably believed Joiner committed aggravated assault with a deadly weapon. We remain mindful that our determination whether a weapon is deadly in its manner of use or intended use does not require the defendant to have actually inflicted harm on the victim. *Johnson v. State*, 509 S.W.3d 320, 323 (Tex. Crim. App. 2017) (citing *Brown v. State*, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986)). In *Johnson*, the defendant removed a knife from his pants, stood no more than a foot or two from the victim, and threatened the victim. *Id*. Although the victim could not provide a detailed description, the jury could reasonably infer "from [defendant's] threats, his proximity to [the victim], and the brandishing of the knife, that the manner in which he used the knife, or intended to use the knife, rendered it capable of causing serious bodily injury or death." *Id*.

M.V. testified Joiner held a knife to her throat, chipped her tooth, and threatened to kill her with it on several occasions. Officer Flaig also noted the unusual number of knives and scissors located on counters throughout the residence. A conviction may be based on the testimony of a single eyewitness, and the jury was free to believe that M.V. was in the best position to observe Joiner's threats. *See Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971)); *accord Castilla v. State*, 374 S.W.3d 537, 539 (Tex. App.—San Antonio 2012, pet. ref'd). Considering all of the evidence presented in the light most favorable to the jury's verdict, we conclude a jury could reasonably find sufficient evidence, beyond a reasonable doubt, that Joiner intentionally or knowingly, threatened M.V. that he would cut or kill her while brandishing a knife. *Adames*, 353 S.W.3d at 860; *accord Gear*, 340 S.W.3d at 746. We further conclude a jury could reasonably conclude that Joiner brandished the knife, and that the manner in which Joiner used the knife, or intended to use the knife, rendered it capable of causing serious bodily injury or death. *Johnson*, 509 S.W.3d at 323.

### 2. *Serious Bodily Injury*

The evidence adduced at trial showed Joiner punched M.V. in the face and about the body multiple times leaving severe bruising. M.V.'s eyes were swollen shut and her face was black and purple. The bruising was seen by several witnesses and photographs, taken approximately a week after the incident, were admitted before the jury. M.V. also testified that Joiner choked her; the evidence of which could still be seen a week later by the broken blood vessels in M.V.'s eyes. When M.V. reached for her cell phone, Joiner pushed her into the bar with such force that she broke several bones in two fingers.

Dr. Otto opined the injuries sustained by M.V. were "serious injuries to the two bones on both fingers, the fourth and first fingers, and serious enough to require surgery because they were

crooked. And they are now straight but they're still stiff." There was also testimony from both Dr. Otto and M.V. that several years after the incident, M.V. still could not make a fist and still suffered from weakness in her hand—injuries she will maintain for the rest of her life. *See Sizemore v. State*, 387 S.W.3d 824, 828 (Tex. App.—Amarillo 2012, no pet.) (reiterating person sustaining injury is qualified to express opinion about the seriousness of that injury); *Nunez v. State*, 117 S.W.3d 309, 327–30 (Tex. App.—Corpus Christi 2003) (concluding damage to finger preventing victim from closing her hand and causing pain through entire arm was serious bodily harm as this injury interfered with her housework and continued to affect her for six months after assault); *Taylor v. State*, 71 S.W.3d 792 (Tex. App.——Texarkana 2002, pet. ref'd) (concluding broken foot requiring surgery and causing limited mobility for several months sufficient evidence of a protracted impairment, i.e. serious bodily injury).

Here, the jury was free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence presented to it. *See Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Based on the entire record, and viewing all of the evidence in the light most favorable to the jury's verdict, we conclude a jury could reasonably conclude the injuries, as inflicted, would cause serious permanent disfigurement or protracted loss or impairment of the function of M.V.'s hand. *Adames*, 353 S.W.3d at 860; *accord Gear*, 340 S.W.3d at 746. The evidence was therefore sufficient for a jury to rationally conclude that M.V. suffered serious bodily injury and we overrule Joiner's appellate issues regarding sufficiency of the evidence.

We turn to Joiner's contention the trial court erroneously admitted the photographs of M.V.

**ADMISSION OF EVIDENCE**

## A.      Standard of Review

An appellate court reviews a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). "As long as the trial court's ruling was within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Prible*, 175 S.W.3d at 731 (quoting *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997)); *accord Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (concluding that discretion is not abused if the decision falls within the zone of reasonable disagreement). "[I]f the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed" regardless of the reason for the trial court's ruling. *Devoe*, 354 S.W.3d at 469; *accord Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

## B.      Texas Rule of Evidence 403

Under Rule 403, even relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, . . . or needless presentation of cumulative evidence." TEX. R. EVID. 403. Rule 403 requires that a photograph possess some probative value and that its inflammatory nature does not substantially outweigh that probative value. *Williams*, 301 S.W.3d at 690. Once a Rule 403 objection is made, the trial court must weigh the probative value of the evidence to determine if it is substantially outweighed by its potential for unfair prejudice. *Santellan*, 939 S.W.2d at 169.

A Rule 403 balancing test includes the following factors:

(1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative

force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). Importantly, the rules of evidence favor the admission of relevant evidence and carry a presumption that relevant evidence is more probative than prejudicial. *See Williams*, 301 S.W.3d at 690 (reiterating photograph's probative value must not be outweighed by its inflammatory nature); *see also Rayford v. State*, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003); *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002).

## C.     Photographs of M.V.

### 1.     Arguments of the Parties

Joiner contends the trial court erred in admitting the photographs of M.V. because she was wearing eye shadow in the photograph and any probative value was substantially outweighed by the danger of confusion and misleading the jury.

The State counters that the probative value of the photographs was not outweighed by the prejudicial effect. The jury could easily decipher the bruises on M.V.'s eyes from the purple shimmer eye shadow.

### 2.     Analysis

Joiner complains about four photographs showing the injuries to M.V.'s face and the discoloration around her eyes. The photographs provided evidence of broken blood vessels and bruising below M.V.'s eyes. During the State's direct examination, M.V. specifically told the jury what part of the photographs were eyeshadow and what part were bruising. The trial court ruled defense counsel could cross-examine M.V. regarding any confusion resulting from "what is a bruise which also appears to be purple and the eye shadow." The testimony highlighted the different colors contained within the photograph, ranging from very light shades of purple to very

dark reds. The photographs also showed evidence the bruises were beginning to heal and beginning to turn lighter in certain areas. The photographs are probative of not only M.V.'s testimony regarding the attack, but also Officer Flaig's testimony regarding how the bruising looked on August 8, 2014, four days before the photographs were taken, and his cause for concern.

Joiner contends the photographs were confusing and could mislead the jury. The four photographs are a part of seventeen photographs offered by the State. The remaining photographs show further bruising and injuries covering M.V.'s body. The photographs in question merely depict the injuries on her eyes and the broken blood vessels within M.V.'s eyes. Joiner has not brought forward any evidence to suggest how the jury was misled by the photographs. The photographs depict the bruises on a victim; and although she was wearing some make-up, the jury was told she was wearing make-up and what part of the eyelid contained the make-up. Because we cannot say the trial court abused its discretion in determining the photographs were genuinely helpful in determining M.V.'s injuries, and that their probative value outweighed their prejudicial effect, we overrule Joiner's appellate issue. *See Williams*, 301 S.W.3d at 687; *Prible*, 175 S.W.3d at 731.

Joiner next contends the trial court erred in admitting the video recording of Joiner at the police station.

### D.    Admission of the Video Recording under Texas Rule of Evidence 403

#### 1.    *Arguments of the Parties*

Joiner argues the trial court erred in admitting the video recording made at the police station of Joiner because the video recording was irrelevant to any issue in the case. *See* TEX. R. EVID. 403.

The State counters the video recording was offered to establish that the police conducted a thorough investigation.

## 2. *Evidence before the Trial Court*

San Antonio Police Department Detective Sergio Flores testified that he was asked to interview Joiner. The State offered a recording of the exchange and defense counsel objected as follows:

> Judge, I'm going to object to the admission of this video based on the fact that when Mr. Joiner walked—is on the video—on the video, it's at a time earlier than the date written on the time that the warrant was approved. And, therefore, he basically was—he was—we know that we have testimony from [Officer] Hodge that he did not get arrested until she got the warrant. She asked somebody when she got the warrant to send them out to get arrested [sic]. We know that's not true because the time is different on the—it's earlier than the time of the warrant.
>
> So, we would object to the video basically on the basis that everything that was done to Mr. Joiner was in violation of his Constitutional Rights, Fifth Amendment, 14th Amendment; Article 1, Section 10 the Texas Constitution as well.

The trial court overruled the objection and the video was played for the jury.

To preserve error for appellate review, a complaining party must make a timely and specific objection. *See* TEX. R. APP. P. 33.1(a). At trial, Joiner did not lodge a Rule 401, 402, or 403 objection on the grounds that the evidence was irrelevant or more prejudicial than probative. *See* TEX. R. EVID. 401 ("Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."); 402 (providing only relevant evidence, not prohibited by statute or rule, is admissible); 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."). Joiner thus failed to preserve this alleged error. *See Clark v. State*, 365 S.W.3d 333, 339–40 (Tex. Crim. App. 2012) (an issue on appeal must comport with the objection made at trial, and an objection stating one legal basis may not be used to support a different legal theory on appeal); *Goff v. State*, 931 S.W.2d 537, 551 (Tex. Crim.

App. 1996) (appellant failed to preserve error on those issues where his trial objections did not comport with his arguments on appeal). Furthermore, even if Joiner had preserved error, his appellate brief does not include an analysis of the rule 403 balancing factors. *See* TEX. R. APP. P. 38.1(i); *see also Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012) (discussing rule 403 balancing factors). We therefore overrule Joiner's issue relating to whether the video recording was relevant and admissible. *See* TEX. R. EVID. 401, 402, 403.

### ADMISSION OF THE VIDEO RECORDING AND JOINER'S RIGHT TO REMAIN SILENT

#### A.      Arguments of the Parties

Joiner also contends the trial court erred in admitting the video recording because it was a comment on his right to remain silent. The State counters the video recording did not invoke Joiner's rights under the Fifth Amendment.

#### B.      Comment on Right to Remain Silent

Evidence obtained in violation of the federal or state constitutions should not be admitted against the accused in the trial of a criminal case. TEX. CODE CRIM. PROC. ANN. art. 38.23; *see also* U.S. CONST. amend. V; TEX. CONST. art. I, § 10. The State may not use a defendant's oral statement made during his custodial interrogation unless he knowingly, intelligently, and voluntarily waived his right against self-incrimination. TEX. CODE CRIM. PROC. ANN. art. 38.22; *see Miranda v. Arizona*, 384 U.S. 436, 444 (1966). As with evidence obtained after a defendant's unequivocal invocation of his right to counsel, evidence obtained after a defendant's unequivocal invocation of his right to remain silent is inadmissible. *Berghuis v. Thompkins*, 560 U.S. 370, 381–82 (2010). A violation of Joiner's Fifth Amendment right to remain silent would be constitutional error. *See Ramos v. State*, 245 S.W.3d 410, 419 (Tex. Crim. App. 2008); *Rodriguez–Flores v. State*, 351 S.W.3d 612, 631 n. 26 (Tex. App.—Austin 2011, pet. ref'd). We review the improper admission of such evidence under the constitutional error standard. *See* TEX. R. APP. P. 44.2(a).

## C.     Evidence before the Trial Court

The oral portion of the video recording about which Joiner complains consists of Detective Flores asking Joiner his name and Joiner telling Detective Flores that he is not going to write or say anything. He notified the officer that he was ill and requested EMS. The rest of the video is simply Joiner in the interview room. There were no additional questions and no additional exchanges. Although the State contends Joiner was not yet *Mirandized*, he was already in handcuffs and in custody when Detective Flores entered the interview room.

For the sake of argument, we will presume that, pursuant to standard procedure, Joiner was read the *Miranda* warnings at the time of his arrest, and his statement, "I refuse, Sir . . . I don't have anything to say," was an invocation of his right to remain silent. Our analysis, however, does not end there; we must determine whether the trial court's decision to admit the video recording constituted harmful error under Texas Rule of Appellate Procedure 44.2(a). *See* TEX. R. APP. P. 44.2(a).

## D.     Harm Analysis

### 1.     *Standard of Review*

"If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction . . . unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction." *Id.* "[A] federal constitutional error [does] not contribute to the verdict obtained if the verdict would have been the same absent the error." *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007) (internal quotation marks omitted).

### 2.     *Harmful Error Analysis*

A harm analysis concerning the improper admission of evidence focuses on the effect of the erroneously admitted evidence on the jury's verdict. *See Long v. State*, 203 S.W.3d 352, 353

(Tex. Crim. App. 2006) (discussing how the appellate court should conduct a proper harm analysis). In determining the likelihood that, absent the improper admission of the evidence, the jury's verdict would have been the same, we must consider the entire record. *Clay*, 240 S.W.3d at 904. Factors to consider in the harm analysis include "the nature of the error (e.g., erroneous admission or exclusion of evidence, objectionable jury argument, etc.), whether it was emphasized by the State, the probable implications of the error, and the weight the jury would likely have assigned to it in the course of its deliberations." *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011); *accord Acevedo v. State*, 255 S.W.3d 162, 173 (Tex. App.—San Antonio 2008, pet. ref'd). We further review the record in a neutral manner focusing on the effect of the error and the possible prejudice on the jurors' decision-making ability. *Harris v. State*, 790 S.W.2d 568, 588–89 (Tex. Crim. App. 1989).

In this case, the source of the alleged error was the trial court's decision to admit the video recording of Joiner after he invoked his right to remain silent. *See Cooper v. State*, 961 S.W.2d 222, 227 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (deciding that admitting that portion of the appellant's testimony made after he invoked his right to terminate led to the appellant's conviction and was harmful error). The video testimony emphasized Joiner's appearance and demeanor in the interview room. *See id.* He was nonresponsive to the officers and did not provide any answers to any questions. The video did not provide any negative evidence connecting Joiner to the alleged offense.

Our analysis must also include an "evaluat[ion of] the entire record in a neutral, impartial, and even-handed manner." *Hargrove v. State*, 162 S.W.3d 313, 323 (Tex. App.—Fort Worth 2005, pet. ref'd). The video appears to have been offered primarily to describe the sequence of events that the officers undertook during the course of the investigation and to respond to defense cross-examination that officers stopped their investigation when M.V. denied she was in harm's

way. We conclude a reasonable jury would have likely considered the testimony as evidence of the officer's action during their deliberations; additionally, the testimony was not emphasized by the State during its closing argument. This is especially true because the State's focus throughout trial was on M.V.'s testimony, what she looked like, the bruises other witnesses saw, and the injuries M.V. sustained. M.V.'s description of Joiner threatening to kill her, beating her about the face and body, and breaking multiple bones in her hand, combined with the photographs, provided graphic testimony upon which the jury likely would have given more weight during its deliberations than a video recording of an almost completely silent Joiner simply indicating he does not want to speak to the officer.

In light of the other evidence of Joiner's guilt, we are convinced that a juror would place little, if any, weight on the video recording and Joiner's statement allegedly invoking his Fifth Amendment right to remain silent. *See Dowthitt v. State*, 931 S.W.2d 244, 257, 263 (Tex. Crim. App. 1996) (deciding that the defendant's statement allegedly invoking his right to remain silent was ambiguous and that admitting his subsequent statements, considering the entire record, did not harm the defendant). After viewing the record in a neutral light, we conclude, beyond a reasonable doubt, that the error, if any, did not prejudice the jurors' evaluation process and did not contribute to Joiner's conviction. *See* TEX. R. APP. P. 42.2(a). We therefore conclude that even if the video recording was erroneously admitted, it was harmless error and Joiner's issue is overruled.

Lastly, we turn to Joiner's argument that the trial court erred in overruling defense counsel's objection to the State's closing argument.

## IMPROPER JURY ARGUMENT

**A.      Standard of review**

We review a trial court's ruling on an objection to improper jury argument for an abuse of discretion. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Such argument does

"not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). "The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id*.

**B.      Proper Jury Argument**

"It is the duty of trial counsel to confine their arguments to the record; reference to facts that are neither in evidence nor inferable from the evidence is therefore improper." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008) (quoting *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973)). Thus, "proper jury argument generally falls within one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement." *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011); *accord Brown*, 270 S.W.3d at 570; *Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990).

**C.      Analysis**

During voir dire, the State asked potential jurors to share personal experiences related to domestic violence. One of the individuals on the venire panel briefly discussed several generations and her religious beliefs to "stick it out."

During closing argument, the State was responding to the theme of defense counsel's closing argument—M.V. lied. Defense counsel counted the lies and the number of people to whom M.V. lied. The prosecutor continued,

> I tell you what doesn't lie. Those eyes don't lie. Officer Flaig saw it, her son saw it, her co-workers. Melissa—Misty Hodge. She tried to handle this herself. You saw in jury selection, victims of domestic abuse. One of the women on our panel, she stayed with her husband after being repeatedly abused. She said they—

Defense counsel objected and the trial court instructed the jury that "[i]t's not part of the evidence." The trial court admonished the jury, "You are the ones who determine what the evidence is that came in, and you make your decisions based on the evidence in this case, not the arguments of counsel."

"When reviewing alleged error in a jury argument, the appellate court must analyze the statement in light of the entire argument and not on isolated instances." *DeLarue v. State*, 102 S.W.3d 388, 405 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

A prosecutor's closing argument may not include presentation of evidence that is outside the record. *Freeman*, 340 S.W.3d at 728. "Improper references to facts that are neither in evidence nor inferable from the evidence are generally designed to arouse the passion and prejudice of the jury and, as such, are inappropriate." *Id.* (citing *Borjan*, 787 S.W.2d at 57). Yet, when the defense invites the argument, the State may respond. *See Albiar v. State*, 739 S.W.3d 360, 362 (Tex. Crim. App. 1987). Here, defense counsel called M.V. a liar for the manner in which she acted and her failure to report the abuse or leave Joiner. In response, the prosecutor simply reminded the jurors that domestic abuse victims do not all act the same way. We, thus, conclude the State's argument was in response to the argument of defense counsel and any potential confusion was cured by the trial court's instructions that statements made during voir dire and arguments of counsel are not evidence and that the jurors are the exclusive fact finders. *See Freeman*, 340 S.W.3d at 727; *see also Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (jury is presumed to follow the trial court's instructions). We overrule Joiner's final issue.

#### CONCLUSION

Having overruled each of Joiner's issues on appeal, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

DO NOT PUBLISH